NIKOLA KOVILIC et al., Plaintiffs-Appellants, v. THE CITY OF CHICAGO, Defendant-Appellee.

First District (4th Division)   No. 1—03—0782

Opinion filed June 30, 2004.—Rehearing denied August 10, 2004.

Brocksmith & Brocksmith, of Chicago (Paul A. Brocksmith and Carolyn Gallagher Brocksmith, of counsel), for appellants.

Mara S. Georges, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Julian N. Henriques, Jr., of counsel), for appellee.

JUSTICE GREIMAN delivered the opinion of the court:

The plaintiffs, Nikola and Maryann Kovilic (the Kovilics), filed a two-count complaint for declaratory judgment and for other relief against the defendant, the City of Chicago (City). Count I sought a determination of the parties' rights and interests in a building at 5642 South Central Avenue, Chicago, Illinois, based upon common law property principles. Count II sought damages for unjust enrichment. In response, the City filed a hybrid motion to dismiss based upon sections 2—615 and 2—619 of the Illinois Code of Civil Procedure. 735 ILCS 5/2—615, 2—619 (West 2000). Following a hearing, the trial court granted the defendant's motion and dismissed the complaint. The Kovilics now appeal, and for the reasons that follow, we affirm.

This case involves a dispute over ownership of a building, which was designed, paid for, and constructed by the plaintiffs on land owned by the City. On December 14, 1990, the property upon which the plaintiffs built the building became the subject of a written lease between the City and the Federal Aviation Administration (FAA). Under that lease, the FAA rented the subject property from the City, and in consideration for its use of the land, the FAA was to operate and maintain air navigational facilities "on and for" Midway Airport and pay rent to the City at the rate of $1 per year. The lease also provided that the FAA, at its option, could terminate the lease "at any time" by giving at least 30 days' notice to the City. Otherwise, when the initial term of the lease ended on September 30, 1991, the lease would renew automatically for 38 successive one-year terms, the last to expire on September 30, 2029.

Article 1(c) of the lease authorized the FAA "to make alterations, attach fixtures, and erect additions, structures or signs" on the City's property, and provided that such items "shall be and remain the property of the [FAA], and may be removed upon the date of expiration or termination of this lease, or within 90 days thereafter." In the event that the City opted to have such additions and structures removed from its property at the conclusion of the lease, article 5 of the lease also provided that the City, at its option, could give notice to the FAA "request[ing] restoration of the premises." If the City gave such notice, the FAA would become obligated, not later than 90 days after expiration or termination of the lease, either to "restore the premises to as good condition as that existing" at the lease's inception, or pay the City "the cost of such restoration of the premises or the diminution of the value of the premises if unrestored, whichever is less."

In January of 1991, the FAA asked the plaintiffs, who are general construction contractors, to submit a bid for the design and construction of a building on the leased premises. The FAA's letter to the plaintiffs indicated that the FAA had a "land lease for the building site" and that the City was the lessor and the FAA was the lessee under that lease.

The FAA accepted the plaintiffs' bid, and the parties then executed a contract to memorialize their agreement. Specifically, the contract provided that the plaintiffs were to construct the building at their own expense, which they did, and that the FAA would lease the building from the plaintiffs and pay yearly rent installments. The contract was set initially for a one-year term ending on September 30, 1992, and would renew automatically for 19 successive one-year terms unless the FAA, at its option, notified the plaintiffs at the end of a term that it no longer wished to renew the contract. The contract also specified that the rent would be $120,120 for the initial term and $128,700 for each renewal term, and that "[a]t the end of the 19th renewal term and upon termination of the lease. title to the improvements constructed by the [plaintiffs] upon the premises shall pass from the [plaintiffs] to the FAA via a Bill of Sale." However, the contract also stated that if the contract expired between the FAA and the plaintiffs because the FAA did not renew it, the FAA "shall assign" the City-FAA land lease to the plaintiffs.

After the building was completed, the FAA moved in and began paying rent to the plaintiffs. In a letter to the City dated September 30, 1993, Maryann Kovilic asked the City to agree to an assignment of the City-FAA land lease to the plaintiffs in the event that the FAA decided not to renew the FAA-Kovilics building contract. The City

responded by informing the plaintiffs' counsel that it would not agree to such an assignment. However, in a letter to the City dated February 17, 1995, plaintiffs' counsel again expressed his clients' interest in buying the land from the City. Again, the City declined the plaintiffs' offer.

On October 7, 1997, the FAA and the plaintiffs entered into a new written lease under which the FAA rented only a portion of the building from the plaintiffs for $1,250 per month. That lease, however, contained no provision concerning the FAA's assignment of the City-FAA land lease to the plaintiffs. The new Kovilics-FAA lease was for a fixed term that expired on September 30, 2000. Apparently, the FAA did not leave the building by that expiration date, although it did leave the building by July 30, 2001.

Thereafter, the FAA terminated its land lease with the City, effective March 8, 2002. In the letter terminating that lease, the FAA released all of its "leasehold rights" in the parcel of land, and in a notarized "Release of Leasehold Interest" accompanying the letter, likewise "surrendered" such rights to the City. On March 22, 2002, the City advised the plaintiffs that, upon termination of the land lease, the building had become property of the City. On May 8, 2002, the City advised the plaintiffs that it had changed the locks and barred the plaintiffs from the building.

Within 90 days of the City-FAA lease termination, the building still remained upon the property. In that regard, the City wrote a letter to the FAA on August 9, 2002, stating that "more than 90 days ha[ve] now passed from the date the FAA terminated the [land] lease and the City is now in sole ownership and possession of the improvements that were installed upon the premises." The plaintiffs, however, informed the City that, in their view, they own the building. Accordingly, on August 10, 2002, the plaintiffs filed their complaint for a judgment declaring them the rightful owners of the building and for monetary damages based upon a claim of unjust enrichment.

On November 1, 2002, the City filed its motion to dismiss under sections 2—615 and 2—619. After hearing oral argument on the motion, the trial court entered an order on February 7, 2003, dismissing the complaint. With regard to the declaratory judgment count, the court ruled that the building is owned by the City, because under the City-FAA land lease, any structure not removed from the City's land within 90 days after termination of that lease "becomes the City's." Regarding the unjust enrichment claim, the court concluded that "[a] party is not unjustly enriched by retaining a benefit which law and equity gives him an absolute right to retain"; that the City had "an absolute right to retain the building"; and that the plaintiffs "had an

opportunity to protect [their] interest and negotiated the lease that [they] negotiated."

■ Initially, we note the City moved to dismiss the complaint under both sections 2—615 and 2—619(a)(9), using an improper hybrid motion. In addition, the trial court granted the motion without distinguishing between the two procedures, which often causes unneeded complication and confusion. *Talbert v. Home Savings of America, F.A.*, 265 Ill. App. 3d 376, 379 (1994), citing *Janes v. First Federal Savings & Loan Ass'n*, 57 Ill. 2d 398, 405-06 (1974); *MBL (USA) Corp. v. Diekman*, 137 Ill. App. 3d 238, 241-42 (1985). Instead, the City should have first challenged the legal sufficiency of the complaint under section 2—615. Only after the trial court determined that a legally sufficient cause of action had been stated should it have entertained a section 2—619 motion. *Talbert*, 265 Ill. App. 3d at 379. However, in cases where the interests of judicial economy would be served and the plaintiff is not prejudiced thereby, the motion shall be deemed to have been filed in the proper manner. *Talbert*, 265 Ill. App. 3d at 379, citing *Smith v. Chemical Personnel Search, Inc.*, 215 Ill. App. 3d 1078, 1081-82 (1991). In this case, we will consider the defendant's motion properly filed.

On appeal, the plaintiffs argue that the trial court erred in dismissing count I of their complaint where it adequately stated all of the required elements of a cause of action for declaratory judgment. The defendant responds that the plaintiffs' complaint fails to allege the required elements of a declaratory judgment action.

The standard of review from a section 2—615 motion is whether the complaint sufficiently states a cause of action. Accordingly, the merits of the case are irrelevant. *Talbert*, 265 Ill. App. 3d at 380. Moreover, any exhibits attached to the complaint are to be considered part of and integrated into the complaint. 735 ILCS 5/2—606 (West 2002). In ruling on a section 2—615 motion to dismiss, we must accept as true all well-pleaded facts and reasonable inferences that could be drawn from those facts, but not unsupported legal or factual conclusions. *Nesby v. Country Mutual Insurance*, 346 Ill. App. 3d 564, 566 (2004).

■ As plaintiffs note, a properly pled declaratory judgment action must meet the following requirements: (1) the plaintiff must have a legal tangible interest; (2) the defendant must have an opposing interest; and (3) an actual controversy must exist between the parties concerning such interests. *Local 1894 v. Holsapple*, 201 Ill. App. 3d 1040, 1050 (1990). Here, plaintiffs claim that their complaint properly alleges all three components.

At the hearing, the trial court focused on what it saw as three

deficiencies with the plaintiffs' claim. "First," the court stated, "the rights that are claimed to create an ownership in the building are those that are in the Land Lease that is between the City of Chicago and the Federal Government and not between the City and the plaintiff. And the plaintiff never obtained an assignment of the government's [FAA's] right in that lease." Second, the court stated "I don't think the government [FAA] has an indefinite right to own the building ***. I think after the 90 days are up, if the government has terminated the lease and they haven't taken any of these things off the property, then the property becomes the City's. It is not an indefinite ownership in the government." Finally, the court made special mention of the fact that after the original building lease was terminated in 1997, the plaintiffs and the FAA entered into a subsequent three-year lease for a portion of the building; however, the new lease did not contain a land lease assignment provision.

We, like the trial court, find that the plaintiffs have failed to allege the proper elements for their declaratory judgment action. Quite simply, we find that the plaintiffs are unable to show that they have a legal tangible interest in the building. As the defendant notes, the plaintiffs' complaint does not allege any facts supporting the ownership interest that they claim. Rather, the complaint makes only two conclusory allegations in that regard. First, that at the time the FAA solicited bids from contractors for the construction of the building, the FAA's "intention" was to execute a lease stating that the selected contractor would own the building for the duration of the lease. Second, plaintiffs claim that their ownership of the building derives from their furnishing the labor and materials and constructing the building at their own expense.

To that end, plaintiffs assert that even though their initial lease with the FAA stated that the FAA was to assign the building to the plaintiffs in the event of an early termination, and that such an assignment might have facilitated the plaintiffs' ability to access and use the building, their retention of their ownership interest in the building was not *dependent* upon receipt of that assignment. Rather, they assert that their ownership interest arose when they built the building. In fact, plaintiffs assert that paragraph 1(c) of the City-FAA lease does not even contemplate that the City created or granted an ownership interest in the building to the FAA. Instead, plaintiffs argue that paragraph 1(c), by its plain language, only manifests the agreement between the City and the United States that the anticipated improvements to the land would not be considered permanent improvements to the freehold. And that, plaintiffs argue, operates only to take the building out of the operation of the general rule that fixtures built

upon the property by a lessee become part of the property after the lease has expired. See *Matzon v. Griffin*, 78 Ill. 477 (1875). The City, plaintiffs concede, never provided an interest in the building to the FAA, so it was never even possible for the FAA to assign the building to the plaintiff. Nevertheless, plaintiffs assert, the fact that no such assignment existed had no bearing on their ownership interest in the building, which was created upon their completion of it.

To the contrary, we think that the absence of any transfer of ownership interest in the building by the City to the FAA also operates to remove the plaintiffs from any possible ownership interest in the property or the attachments made thereon. As noted, the City-FAA land lease gave the FAA the rights to occupy the land owned by the City and to construct a building on that property. Thereafter, the FAA contracted with the plaintiffs to construct a building pursuant to the City-FAA land lease; however, the FAA-Kovilics contract gave the Kovilics no rights against the City. In fact, as the City notes, it was not even a party to that contract. Accordingly, any rights the plaintiffs had in the building must have derived directly from their contract with the FAA. And based upon the well-established principle of property law that a transferee of property can never obtain a greater interest in the property than the person conveying the property has the power to convey, it was impossible for the FAA to grant the plaintiffs any rights inconsistent with the City-FAA lease. See *Nokomis Quarry Co. v. Dietl*, 333 Ill. App. 3d 480, 485 (2002) (held that a tenant "could not take greater rights to the real estate and fixtures than *** [the landlord] had the power to convey").

Looking, then, to the City-FAA lease, it is clear that the City limited the FAA's rights with respect to any buildings constructed on the City's property. Specifically, the City-FAA lease provided that if the FAA decided to terminate the lease, the City could require the FAA either to remove any fixtures or improvements made to the property or make an adjustment in its rent payments to cover the cost of removing such improvements. And while we agree with the plaintiffs that the language regarding attachments is permissive, *i.e.*, that any attachments could be, but did not have to be, removed from the land, we do not read that clause to state that the City's failure to request removal of any attachments is tantamount to a *sub silentio* grant of the City's entire ownership interest in those attachments.

As the City points out, the language of the requirement of the 90-day time period for the removal of any attachments, as well as the consequences of the FAA not acting within those 90 days, was not permissive. Moreover, article 5 of the City-FAA lease required that the FAA was to surrender possession of the premises upon the expiration

of the lease, subject only to its option to have the FAA remove any attachments. Based upon the restrictions in these clauses, we find that the FAA retained no rights in the leased property after 90 days following the FAA's decision not to renew the City's contract. While the plaintiffs claim that "nothing in the land lease provided that title to property left on the land more than 90 days after termination of the land lease would transfer to the City," the fact remains that the City never extended the "title" of those attachments to any party; it merely allowed the FAA the option to remove them within 90 days if so instructed by the City.[1] And because the plaintiffs' lease failed to secure their own outright ownership of the rights to the building, the plaintiffs' rights, if any, are subject to the terms of the FAA-City lease.

Thus, we are also unconvinced by the plaintiffs' argument that the City "waived" its right to require removal of the attachments by failing to make a demand upon the FAA. Initially, we note that plaintiffs have waived that argument, as it was raised for the first time in their reply brief. *Todt v. Ameritech Corp.*, 327 Ill. App. 3d 359, 369 (2002); 188 Ill. 2d R. 341(g) (arguments raised for the first time in a reply brief will not be addressed by the appellate court). Waiver aside, as plaintiffs themselves admit, the FAA never had an interest in the building to convey; the City simply reserved the right to require the FAA to remove the attachments *if the City so chose.* Accordingly, it does not follow logically that the City's decision not to trigger the restoration clause would necessarily result in its total forfeiture of its rights to the building. Indeed, there is no language in either contract to suggest that the City's "failure to act" would result in such a conveyance. And because our interpretation of the contracts must be in accordance with the plain and obvious meaning of the words used, and not through providing potentially unintended meaning to those words, we will not read such an interpretation into the contracts here. *Ertl v. City of De Kalb*, 303 Ill. App. 3d 524, 527 (1999).

With regard to the plaintiffs' contention that they possess title to the building because they "furnish[ed] the labor and materials and construct[ed] the building at their own expense," they simply have not provided any legal authority as to why we should not apply the

---

[1]The plaintiffs contend that the trial court erred in "finding" that the rights that paragraph 1(c) granted an ownership interest in the building to the FAA. However, the trial court never made such a finding. As noted above, it ruled that "the rights that are *claimed* to create an ownership in the building are those that are in the Land Lease that is between the City of Chicago and the Federal Government and not between the City and the plaintiff." (Emphasis added.) We view this as nothing more than the trial court's recitation of what it found to be the grounds for plaintiffs' own argument.

general rule that fixtures built upon the property by a lessee become part of the property after the lease has expired. By failing to cite such authority, plaintiffs have waived this argument. See *Brown v. Tenney*, 125 Ill. 2d 348, 362 (1988). Waiver aside, the plaintiffs' argument is not well taken. As previously noted, the FAA could not grant the plaintiffs any greater rights than it itself had in the building (*Nokomis*, 333 Ill. App. 3d at 485). As plaintiffs themselves admit, the City granted no interest whatsoever in the building to the FAA. Accordingly, even though the plaintiffs invested great time and expense into the construction and creation of the building, they never obtained the contractual conveyance necessary to claim absolute ownership.

In this regard, we note that the original FAA-Kovilics contract set forth conditions under which the Kovilics would acquire title to the building if the FAA terminated that contract. However, even though the plaintiffs' complaint alleges that the FAA did terminate that contract, they do not allege that the FAA ever assigned the land lease to them. In addition, while it may be possible that the FAA breached its initial contract with the plaintiffs by failing to make such an assignment (even though, as plaintiffs admit, they could not), the fact remains that the plaintiffs have not chosen to pursue a claim against the FAA—only the City. In any event, the newer FAA-Kovilics lease contained no provisions regarding the assignment of the land lease or any attachments made thereto. As we are to deem all parties equally capable of negotiating and securing their own rights into a contract, we have no other course but to enforce the contracts as written and agreed upon by the parties.

■ Because of our finding that the plaintiffs' complaint for declaratory judgment is deficient for lacking a proper allegation that they have a legal, tangible interest in the building, we must also affirm the trial court's dismissal of plaintiffs' count for unjust enrichment. As the supreme court has noted, "[t]o state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill. 2d 145, 160 (1989). Accordingly, we find the trial court was correct in finding that "[a] party is not unjustly enriched by retaining a benefit which the law and equity gives him an absolute right to retain." Because the City lawfully contracted to retain its ownership of the attachments on the subject property, it simply cannot be said that it was unjustly enriched by exercising its contractual rights. As we noted in *Prodromos v. Poulos*, 202 Ill. App. 3d 1024, 1032 (1990), "[t]his rule holds the contract

parties to their agreement and prevents a party who has made a bad business decision from asking the court to restore his expectations. An [unjust enrichment] claim is not a means for shifting risk one has assumed under contract."

As an aside, we realize that plaintiffs had the very real expectation that they were to receive the "rent" from the FAA for as long as 20 years under their lease with the FAA, and that because the FAA terminated the lease before completion of that period, the plaintiffs did not receive much of the proceeds they had hoped to realize. However, the City cannot be blamed for the FAA's actions. Had the plaintiffs constructed their contract in such manner as to require an outright conveyance of the building rights to the FAA and, in turn to the plaintiffs, much less a promise that the FAA would not terminate the City-FAA land lease, our result today very well may have been different. While principles of equity may be on the side of the plaintiffs, they still remained contractually bound to the written agreement that they brokered for themselves.

For the foregoing reasons, we affirm the trial court's dismissal of both counts of plaintiffs' complaint.

Affirmed.

QUINN, P.J., and THEIS, J., concur.