No. 3-08-0543

Filed October 20, 2009

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2009

| | |
|---|---|
| RICHARD MARTIS, on Behalf of Himself and All Others Similarly Situated, | Appeal from the Circuit Court of the Tenth Judicial Circuit Tazewell County, Illinois, |
| Plaintiff-Appellant, | |
| v. | |
| PEKIN MEMORIAL HOSPITAL INC., a Not-For-Profit Corporation d/b/a Pekin Hospital and Progressive Health Systems; PEORIA-TAZEWELL PATHOLOGY GROUP S.C.; ELIZABETH ALENGHAT; ELIZABETH A. BAUER-MARSH; ALLAN C. CAMPBELL; RONALD CHAMPAGNE; WILLIAM EBY; DAVID J. FLANDERS; DONALD L. FREDERICK; JON F. GENTRY; KATHRYN O. KRAMER; KAREN F. McCARRON; DOUGLAS J. McGRADY; JOE MUSSELMAN; DEVENDRA V. TRIVEDI; THOMAS A. WEBB; and JOHN DOES 1 THROUGH 20, Being Former Partners of Peoria-Tazewell Pathology Group not presently known to Plaintiff; and DATA MANAGEMENT, INC., | No. 05-L-23 |
| Defendants-Appellees. | Honorable John A. Barra, Judge, Presiding. |

JUSTICE LYTTON delivered the opinion of the court:

Plaintiff, Richard Martis, filed a complaint against defendants, Pekin Memorial Hospital, Data Management, Inc., and Peoria-Tazewell Pathology Group and its individual shareholders. Defendants filed motions to dismiss, which the trial court granted.

We affirm.

In October 2004, plaintiff's physician instructed plaintiff to undergo laboratory testing at Pekin Memorial Hospital. Plaintiff did not have medical insurance at the time of the testing. At the hospital, plaintiff received a form authorizing treatment, which stated in pertinent part:

"I understand, some physicians who furnish professional services to me (the patient), whether that care or service is provided directly or indirectly, are independent contractors and are not agents or employees of the hospital. This provision includes, but is not limited to radiologists, pathologists, anesthesiologists and any physicians called in as consultants. The hospital does not bill for the services rendered by each physician that tends to my needs during the course of my care and treatment. By signing _____ (initial) I agree to pay these charges for physician services if my health plan does not cover all of the physician charges."

Plaintiff placed his initials where indicated on the form.

Approximately one month later, plaintiff received two bills for the tests: one from the hospital for $609 and one from the pathology group for $73.30. The bill from the pathology group contained the following explanation of services:

"You recently had some laboratory work performed at the hospital noted on the front of this statement. The laboratory at this hospital is directed by the medical

group of pathologists as referenced on the front of this statement. A pathologist is a physician who specializes in applying medical knowledge and judgment to the testing of laboratory specimens.

This bill is for the professional services of a pathologist of the named group. These services do not necessarily involve personal review of your test(s). They include the pathologist's supervision of the laboratory to make sure that your results are timely and medically reliable. They also include the pathologist's availability - seven days a week, 24 hours a day - to review any result that is questionable and to discuss various medical issues that might be raised about your test results by your doctor.

The hospital will make a separate charge for its role in your testing. That charge will cover the Hospital's costs in furnishing the space, equipment, and technician's service involved with your test(s). ***

PROFESSIONAL COMPONENT SERVICES

You may receive a bill from the pathologists for their professional component services which are required, by law, for the operation of the clinical laboratory. These services are provided on a 24 hours a day, seven days a week basis and include, but are not limited to:

1. Assuring that tests, examinations, and procedures are properly performed, recorded and reported.

3

2. Interacting with members of the medical staff regarding issues of laboratory operations, quality and test availability.

3. Designing protocols and establishing parameters for performance of clinical testing.

4. Recommending appropriate follow-up diagnostic tests, when appropriate.

5. Supervising laboratory technical personnel and advising them about aberrant results.

6. Selecting, evaluating and validating test methodologies.

7. Direct, performing, and evaluating quality assurance and control procedures.

8. Evaluating clinical laboratory data and establishing a process for review of test results prior to issuance of patient reports.

9. Assuring the hospital's laboratory's compliance with state licensure laws, Medicare conditions, JCAHO standards, the College of American Pathologists Laboratory Accreditation Program and federal certification standards."

Plaintiff filed a two-part complaint against defendants.[1]

---

[1] Part I challenged the hospital's billing practices toward uninsured patients. Plaintiff and the hospital entered into a settlement agreement disposing of those claims. Only the claims

Part II consisted of nine counts that alleged defendants double-billed for their services. Plaintiff alleged that the pathology group and its members violated the Medical Practice Act of 1987 (225 ILCS 60/1 et seq. (West 2006)), the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 et seq. (West 2006)), and the Medical Patient Rights Act (410 ILCS 50/1 et seq. (West 2006)), and that they were unjustly enriched. He further alleged that the hospital violated the Medical Patient Rights Act, the Consumer Fraud Act and that it was unjustly enriched. Finally, plaintiff alleged that Data Management violated the Consumer Fraud Act. Plaintiff requested declaratory and injunctive relief against all defendants on behalf of himself and others similarly situated.

Defendants filed motions to dismiss plaintiff's complaint. The trial court granted the motions, holding that professional component billing is not actionable.

We review de novo the trial court's order granting defendants' motions to dismiss for failure to state a claim. See Pooh-Bah Enterprises, Inc. v. County of Cook, 232 Ill. 2d 463, 473, 905 N.E.2d 781, 789 (2009).

I. Medical Practice Act Claims

Plaintiff argues that the pathology group's practice of billing for professional component services violates section 22(A)(14) of the Medical Practice Act because such services are not

contained in part II are relevant for purposes of this appeal.

5

"actually and personally rendered" to patients. Defendants respond that plaintiff has no private right of action under the Act and, even if he did, defendants did not violate the Act.

The Medical Practice Act is a regulatory statute designed to protect the public health and welfare from those not qualified to practice medicine. Ikpoh v. Department of Professional Regulation, 338 Ill. App. 3d 918, 926, 789 N.E.2d 442, 449 (2003); Tovar v. Paxton Community Memorial Hospital, 29 Ill. App. 3d 218, 220, 330 N.E.2d 247, 249 (1975). Section 22(A)(14) of the Act prohibits fee-splitting and other fee-sharing arrangements. TLC The Laser Center, Inc. v. Midwest Eye Institute II, Ltd., 306 Ill. App. 3d 411, 427, 714 N.E.2d 45, 56 (1999). Specifically, section 22(A)(14) states that a physician may be disciplined for the following conduct:

> "Dividing with anyone other than physicians with whom the licensee practices in a partnership, Professional Association, limited liability company, or Medical or Professional Corporation any fee, commission, rebate or other form of compensation for any professional services not actually and personally rendered." 225 ILCS 60/22(A)(14) (West 2006).

The conduct that the legislature seeks to prohibit in section 22(A)(14) is (1) fee-splitting for patient referrals between licensees and (2) fee-sharing arrangements, "whereby a licensee 'divides with anyone' *** a percentage of the monies earned by the licensee for medical services he or she has performed." (Emphasis

omitted.) <u>Vine Street Clinic v. Healthlink, Inc.</u>, 222 Ill. 2d 276, 292, 856 N.E.2d 422, 433-34 (2006).

The purpose of section 22(A)(14) is to ensure that physicians are making responsible and appropriate medical decisions that are not motivated by monetary compensation. As the court in <u>TLC</u> stated:

"The policy reasons behind the prohibition are the danger that such an arrangement might motivate a non-professional to recommend a particular professional out of self-interest, rather than the professional's competence. In addition, the judgment of the professional might be compromised, because the awareness that he would have to split fees might make him reluctant to provide proper (but unprofitable) services to a patient, or, conversely, to provide unneeded (but profitable) treatment." <u>TLC</u>, 306 Ill. App. 3d at 427, 714 N.E.2d at 56.

An arrangement that does not relate patient care to an increase or decrease in revenue does not violate section 22(A)(14) of the Act. See <u>Vine Street Clinic</u>, 222 Ill. 2d at 296, 856 N.E.2d at 435-36.

The primary rule of statutory construction is to ascertain and give effect to the legislature's intent and meaning. <u>Brucker v. Mercola</u>, 227 Ill. 2d 502, 513, 886 N.E.2d 306, 313 (2007). The language of the statute is the best indication of legislative intent. <u>Brucker</u>, 227 Ill. 2d at 513, 886 N.E.2d at 313. All provisions of a statute are viewed as a whole. <u>Brucker</u>, 227 Ill. 2d at 514, 886 N.E.2d at 313. Accordingly, all words and phrases

7

must be interpreted in light of other provisions of the statute and must not be construed in isolation. Brucker, 227 Ill. 2d at 514, 886 N.E.2d at 313. Each word, clause and sentence of the statute must be given meaning and not rendered superfluous. Brucker, 227 Ill. 2d at 514, 886 N.E.2d at 313. In determining the legislative intent, a court may properly consider not only the language of the statute, but also the purpose of the law, the evils sought to be remedied, and the goals to be achieved. Brucker, 227 Ill. 2d at 514, 886 N.E.2d at 313.

If we assume for purposes of this decision that a private right of action exists under the Medical Practice Act, plaintiff has nonetheless failed to establish that defendants engaged in fee-sharing or fee-splitting. Plaintiff alleged that defendants violated section 22(A)(14) of the Act by charging for services "not actually and personally rendered." However, section 22(A)(14) does not prohibit such conduct. Rather, section 22(A)(14) prohibits fee-splitting and fee-sharing for services "not actually and personally rendered." 225 ILCS 60/22(A)(14) (West 2006); TLC, 306 Ill. App. 3d at 427, 714 N.E.2d at 56.

According to the bill the pathology group sent to plaintiff and the form plaintiff signed upon entering the hospital, the bills from the hospital and pathology group are for separate services: the hospital bills for its "costs in furnishing the space, equipment, and technician's service," while the pathology group bills for "the professional services of a pathologist." Two separate entities sending bills for different services is not fee-

8

splitting or fee-sharing.  Thus, plaintiff has failed to allege a violation of section 22(A)(14) of the Act.  See Vine Street Clinic, 222 Ill. 2d at 296, 856 N.E.2d at 436.  The trial court properly dismissed plaintiff's Medical Practice Act claims.

## II.  Consumer Fraud Act Claims

Plaintiff argues that defendants violated the Consumer Fraud Act by (1) failing to comply with the Medical Practice Act, and (2) billing for services not directly provided to a patient, which is unfair and deceptive.  The Consumer Fraud Act is intended to protect consumers against unfair and deceptive business practices. Ramirez v. Smart Corp., 371 Ill. App. 3d 797, 806, 863 N.E.2d 800, 811 (2007).  The elements of a claim under the Consumer Fraud Act are: an unfair or deceptive act or practice by the defendant; the defendant's intent that plaintiff rely on the deception; the occurrence of the deception during a course of conduct involving trade or commerce; and actual damage to the plaintiff proximately caused by the deception.  Ramirez, 371 Ill. App. 3d at 806, 863 N.E.2d at 811-12.  To be unfair, the defendant's conduct must: (1) offend public policy; (2) be immoral, unethical, oppressive, or unscrupulous; and (3) cause substantial injury to consumers. Ramirez, 371 Ill. App. 3d at 806, 863 N.E.2d at 812.

### A.  Medical Practice Act

The Illinois legislature has identified 29 statutes which, if violated, will constitute an unlawful practice within the meaning of the Consumer Fraud Act.  815 ILCS 505/2Z (West 2006).  The Medical Practice Act is not one of the named statutes.  See 815

9

ILCS 505/2Z (West 2006). When certain things are enumerated in a statute, that enumeration implies the exclusion of all other things even if there are no negative words of prohibition. See People ex rel. Daley v. Grady, 192 Ill. App. 3d 330, 333, 548 N.E.2d 764, 766 (1989) (applying the statutory rule of construction of expressio unius est exclusio alterius ("the expression of one thing is the exclusion of another") (Black's Law Dictionary 521 (5th ed. 1979))).

Plaintiff claims that defendants' alleged violation of the Medical Practice Act constitutes a violation of the Consumer Fraud Act. We disagree. First, as we have already found, plaintiff failed to state a claim for violation of the Medical Practice Act. Second, even if plaintiff had properly alleged a violation, such a violation does not constitute an unlawful practice. The Medical Practice Act is not included in section 2Z of the Consumer Fraud Act. If the legislature had intended Medical Practice Act violations to constitute unlawful practices under the Consumer Fraud Act, it could have included them in section 2Z. See McCabe v. Crawford & Co., 210 F.R.D. 631, 640 (N.D. Ill. 2002) (provision of the Illinois Vehicle Code not listed in section 2Z could not form the basis for a Consumer Fraud Act claim). Because the Medical Practice Act is not an enumerated statute under section 2Z, an unlawful practice cannot be implied, and plaintiff's claim must fail.

### B. Unfair or Deceptive Practice

Next, we must determine if plaintiff has adequately alleged

10

that defendants' practice of billing for professional component services of pathologists is unfair or deceptive. The practice of professional component billing by pathology groups has been litigated in several courts. In the majority of cases, courts have upheld the practice. See Central States, Southeast & Southwest Areas Health & Welfare Fund v. Pathology Laboratories of Arkansas, P.A., 71 F.3d 1251 (7th Cir. 1995); Health Options, Inc. v. Palmetto Pathology Services, P.A., 983 So. 2d 608 (Fla. App. 2008); Arizona Society of Pathologists v. Arizona Health Care Cost Containment System Administration, 201 Ariz. 553, 38 P.3d 1218 (App. 2002). But see Central States, Southeast & Southwest v. Florida Society of Pathologists, 824 So. 2d 935 (Fla. App. 2002).

In Central States v. Pathology Laboratories of Arkansas, an employee welfare plan brought suit under the Employee Retirement Income Security Act (ERISA), seeking to enjoin Pathology Laboratories from billing patients directly for professional component services. The Seventh Circuit refused to prohibit Pathology Laboratories from billing patients directly for professional component services because "patients agreed when entering the Baptist Hospitals to pay all bills, whether or not the fees were covered by insurance." Pathology Laboratories, 71 F.3d at 1253. The court found that professional component fees were not "bogus" because the pathology group "provides supervisory services of value to all patients, and interpretation services of value to some." Pathology Laboratories, 71 F.3d at 1253.

In Health Options, a pathologists' group brought an action

11

against a health maintenance organization (HMO) to recover payment for professional component services. In Florida, an HMO must pay for services rendered by a provider to an HMO member as long is it is "medically necessary and approved physician care rendered to a non-Medicare subscriber." Health Options, 983 So. 2d at 614, citing Fla. Stat. Ann. §641.3154(1) (2005); Fla. Admin. Code Ann. 69O-191.049(2) (2005). The HMO contended that professional component services were not "approved physician care." The court disagreed, finding that "physician care" includes care that is "supervised by physicians," such as supervisory duties of pathologists. Health Options, 983 So. 2d at 614. The court noted that Florida law previously required services to be "rendered directly to the HMO member," but the current law "removed and thereby rejected the word 'directly.'" (Emphasis added.) Health Options, 983 So. 2d at 615. Thus, the court held that pathology services rendered to a patient "are compensable whether or not a pathologist and patient meet directly." Health Options, 983 So. 2d at 615.

In Arizona Society of Pathologists, the court determined that a state pathologists' organization and private pathology group were entitled to injunctive relief barring a state health-care agency (AHCCCS) from enforcing a policy statement not to reimburse them for indirect costs, such as supervising the laboratory. AHCCCS contended that the policy statement was merely a recitation of existing Arizona law, which made it unlawful to bill AHCCCS for services "not provided." See Ariz. Rev. Stat. §36-2918(A)(1)

12

(1999). The court disagreed, finding that Arizona law "does not in and of itself disallow payment for indirect pathology services." <u>Arizona Society of Pathologists</u>, 201 Ariz. at 558, 38 P.3d at 1223. The court found that indirect pathology services are not items or services "not provided as claimed." <u>Arizona Society of Pathologists</u>, 201 Ariz. at 558, 38 P.3d at 1223.

One court has ruled that patients are not obligated to pay for professional services rendered by pathologists. In <u>Florida Society of Pathologists</u>, a group of pathologists sought damages for unfair trade practices and tortious interference with business relationships against Central States for sending letters to its members advising that they should not pay for professional component charges. In support of its claim that patients were required to pay professional component fees, Florida Society cited to admission forms mentioning that patients "may receive bills from pathologists, anesthesiologists and other professionals." <u>Florida Society of Pathologists</u>, 824 So. 2d at 939. The court found that the forms did not obligate patients to pay for professional component services, explaining: "[W]e see nothing that obliges a patient to pay for what might be characterized as the pathologists' overhead and/or a pro rata share of hands-on pathology services performed for another patient." <u>Florida Society of Pathologists</u>, 824 So. 2d at 939.

After our review of these cases and the Illinois Consumer Fraud Act, we find that defendants' professional component billing was not an unfair or deceptive practice. Before any of plaintiff's

13

pathology tests were performed, plaintiff was notified that he must pay for services "provided directly or indirectly" to him and that he would receive separate bills for such services. When plaintiff placed his initials on the authorization form, he obligated himself to pay for indirect professional component services. See Pathology Laboratories of Arkansas, 71 F.3d at 1253; Health Options, 983 So. 2d at 615. Since plaintiff was notified and agreed that he would be responsible for indirect, as well as direct, services, defendants billing plaintiff for those services was not deceptive or unfair. Under these circumstances, we do not find that the actions of the defendants offended public policy, were immoral, unethical, oppressive, unscrupulous or caused substantial injury to plaintiff. See Ramirez, 371 Ill. App. 3d at 806, 863 N.E.2d at 812. The trial court properly ruled that plaintiff's consumer fraud claims failed to state a cause of action.

### III. Unjust Enrichment Claims

Plaintiff argues that defendants' billing for professional pathology services constituted unjust enrichment.

To state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment and that the defendant's retention of the benefit violates the fundamental principles of justice, equity and good conscience. Kovilic v. City of Chicago, 351 Ill. App. 3d 139, 147, 813 N.E.2d 1046, 1053-54 (2004). The theory of unjust enrichment is based on a contract implied in law. Ramirez, 371 Ill. App. 3d at 808, 863 N.E.2d at

14

813. Where there is an express contract that governs the relationship of the parties, the doctrine of unjust enrichment has no application. Ramirez, 371 Ill. App. 3d at 809, 863 N.E.2d at 814.

Here, plaintiff entered into a contract with the hospital, pursuant to which he agreed to pay for all direct and indirect services provided to him by independent physicians. Pathologists were expressly mentioned in the contract; thus, they were intended third-party beneficiaries to it. See In re Marriage of Simmons, 355 Ill. App. 3d 942, 955, 825 N.E.2d 303, 314 (2005). Since the relationship of plaintiff and defendants was governed by an express contract, plaintiff has failed to state a claim for unjust enrichment. See Ramirez, 371 Ill. App. 3d at 809, 863 N.E.2d at 814.

IV. Violation of the Medical Patient Rights Act

Plaintiff argues that the hospital and pathology group violated section 3(b) of the Medical Patient Rights Act because they did not provide him with a "reasonable explanation" of the professional service component charges. Defendants respond that plaintiff does not have a private right of action under the Act and that, even if he did, he failed to state a claim under the Act.

Section 3(b) of the Act enumerates certain patient rights:

"The right of each patient, regardless of source of payment, to examine and receive a reasonable explanation of his total bill for services rendered by his physician or health care provider, including the itemized charges

15

for specific services received. Each physician or health care provider shall be responsible only for a reasonable explanation of those specific services provided by such physician or health care provider." 410 ILCS 50/3(b) (West 2006).

Here, we need not decide whether the Medical Patient Rights Act allows a private right of action since we find that plaintiff has failed to state a claim under the Act. Section 3(b) of the Act is violated when a medical provider fails to give a patient a "reasonable explanation" of a medical bill. The bill the pathology group sent to plaintiff specifically explains that it is "for the professional services of a pathologist," which does "not necessarily involve personal review of your test(s)" but includes "the pathologist's supervision of the laboratory to make sure that your results are timely and medically reliable" and "the pathologist's availability - seven days a week, 24 hours a day - to review any result that is questionable and to discuss various medical issues that might be raised about your test results by your doctor." The bill then describes professional component services, listing nine examples of such services. The bill contains a clear and thorough explanation of defendants' charges. We find this disclosure to be a "reasonable explanation of [the] specific services provided" by the pathology group. The trial court correctly found that plaintiff failed to state a cause of action under the Medical Patient Rights Act.

V. CONCLUSION

16

The order of the circuit court of Tazewell County is affirmed.

Affirmed.

HOLDRIDGE, J., concurs.

JUSTICE McDADE, specially concurring in part, dissenting in part:

The majority has found that, assuming "a private right of action exists under the Medical Practice Act (MPA), plaintiff has nonetheless failed to establish that defendants engaged in fee-sharing or fee-splitting" (slip order at 8) and, therefore, plaintiff has failed to allege a violation of section 22(A)(14) of the MPA. Slip order at 8. The majority has found that defendants' alleged violation of the MPA cannot constitute a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) because the MPA is not an enumerated statute under section 2Z of the Consumer Fraud Act. Slip order at 9-10.

The majority also finds that "defendants' professional component billing was not an unfair or deceptive practice" (slip order at 13) because plaintiff obligated himself to pay for indirect professional component services by initialing the authorization form for services provided directly or indirectly to him. Slip order at 13. Similarly, the majority holds that because plaintiff entered into an express contract with the hospital, pursuant to which he agreed to pay for all direct and indirect services provided to him by independent physicians, plaintiff has failed to state a claim for unjust enrichment. Slip order at 14-15. Finally, the majority holds that plaintiff failed to state a claim under the Medical Patient Rights Act because his bill contains a clear and thorough explanation of defendants' charges. Slip order at 16.

I agree with the majority's judgment that the trial court properly dismissed plaintiff's direct claims under the MPA and the Medical Patient Rights Act because I believe that neither statute grants

17

plaintiff a private cause of action under the Acts. Therefore, I concur in that portion of the judgment. For the following reasons, I dissent from the remainder of the majority's findings and judgment.

The majority concludes that defendants did not engage in fee splitting or fee sharing in violation of section 22(A)(14) of the MPA because "the bills from the hospital and pathology group are for separate services." Slip order at 8. I disagree with the majority because I believe that plaintiff has raised a material question of fact as to whether the bills from the hospital and pathology group were not for separate services but were in fact for the same service.

The majority relies heavily on decisions of other courts to conclude that defendants' practice of billing for professional component services of pathologists is not unfair or deceptive. I find that the cases the majority relies upon are of limited persuasiveness not only because they lack precedential weight in this court but, primarily, because those cases present different questions than those raised here. Most notably, I find *Central States Health & Welfare Fund v. Pathology Laboratories of Arkansas*, 71 F. 3d 1251, 1253 (7th Cir. 1995), of limited persuasiveness. The *Central States* court's actual decision focuses on whether the plaintiff was required to pay the pathology group under the parties' written agreement.

The *Central States* court found that in November 1991 the insurer simply "stopped paying the professional component bills, pointing to Article 4.11 of its Plan Document, which restricts payment to the expenses of a person who 'receives treatment.' The professional component fee does not signify that the patient received any treatment by a pathologist and therefore, the Fund concluded, is not compensable." *Central States*, 73 F. 3d at 1252-53. The lower court held and the Seventh Circuit affirmed that the group was entitled to payment under the agreement because "the Fund had been aware of the nature of professional-component bills long before November 1991." *Central*

*States*, 73 F. 3d at 1253. *Central States* is best interpreted as holding that the plaintiff could not reinterpret the parties' agreement long after it became effective and while it remained in effect.

In this case, plaintiff has raised a question of material fact as to whether the hospital and the pathology group billed him for the same service. Because the facts are so similar, *Central States* is instructive, in my opinion, only on that question. The Seventh Circuit found that the district court judge held that "the professional component does not represent 'treatment' within the meaning of § 4.11 of the Plan Document because Pathology Laboratories cannot demonstrate that it provided hands-on services for any particular patient." *Central States*, 73 F. 3d at 1253.

Notably, the *Central States* court did not disturb the district court's determination that the pathology group did not provide treatment to a *particular* patient. The Seventh Circuit's written opinion indicates that it agreed with the district court's assessment. It found that "[t]he professional component *** spreads costs across all patients." *Central States*, 73 F. 3d at 1252.

If the trier of fact in this case were to find, as did the court in *Central States*, that the pathology group provides "supervisory services of value to all patients, and interpretation services of value to [(only)] some" (*Central States*, 73 F. 33 at 1253), then it might also reasonably infer that a portion of the pathology group's bill is also embodied in the hospital's cost for maintaining a laboratory. If the trier of fact were to find that defendants are billing plaintiff for the same service in providing and maintaining a laboratory, it could reasonably conclude that, in purporting to distinguish the cost of certain *components* of that service, defendants are in fact splitting plaintiff's payment for laboratory service in violation of section 22(A)(14). Alternatively, those findings could also reasonably result in a conclusion that the hospital and the pathology group are double-billing the patient for the same cost.

-19-

I have already stated my agreement with the majority that plaintiff does not possess the right to a private cause of action under the MPA. The effect of defendants' possible violation of the MPA is not to provide a remedy to plaintiff under that statute but to serve as a basis for plaintiff's claims under the Consumer Fraud Act, regardless that the MPA is not listed in section 2Z.

I find that plaintiff's allegations are sufficient to state a cause of action for consumer fraud because defendants' billing practices may violate the MPA and, therefore, may constitute a violation of the public policy of this state. *Vine Street Clinic v. HealthLink, Inc.*, 222 Ill. 2d 276, 295, 856 N.E.2d 422, 435 (2006), supports my conclusion. First, the *HealthLink* court held that the MPA, and section (14) specifically, expresses the public policy of the state. *HealthLink, Inc.*, 222 Ill. 2d at 296 ("'fee-splitting arrangements' violated public policy").

Second, a violation of public policy may constitute consumer fraud. The supreme court has recognized as follows:

"Section 10a of the [Consumer Fraud Act] creates a remedy for those suffering damage as a result of a violation of the Act. 815 ILCS 505/10a(a) (West 2004); *Robinson v. Toyota Motor Credit Corp.,* 201 Ill. 2d 403, 417, 775 N.E.2d 951, 960 (2002). Recovery under the Act may be had for unfair as well as deceptive conduct. *Robinson,* 201 Ill.2d at 417, 775 N.E.2d at 960.

'In determining whether conduct or an action is unfair, we must consider whether the practice or action (1) offends public policy ***.'

-20-

[Citation.]

> The conduct 'must violate public policy, be so oppressive as to leave the consumer with little alternative except to submit to it, and injure the consumer.' [Citations.] All three criteria need not be satisfied to support a finding of unfairness; rather, an action may be unfair because of the degree to which it meets a single criteria or because it meets all three to a lesser extent. [Citation.]" *Pantoja-Cahue v. Ford Motor Credit Co.*, 375 Ill. App. 3d 49, 60-61, 872 N.E.2d 1039, 1048-49 (2007).

I would find that plaintiff has stated a claim that defendants' billing practices may violate the Consumer Fraud Act in that they may contravene public policy embodied in section 22(A)(14) of the MPA. In *Ramirez v. Smart Corp.*, 371 Ill. App. 3d 797, 807, 863 N.E.2d 800, 812 (2007), we found as follows:

> "At a minimum, a reasonable inference from the limited evidence adduced indicates that Ramirez sufficiently pled a cause of action under the statute. This cause involves a uniform billing practice that, at this stage of the proceedings, has the potential to be unethical and offend public policy. Accordingly, we find that there is sufficient evidence to create a genuine issue of material fact as to whether Smart's actions violated the Consumer Fraud Act. See *Avery,* 216 Ill. 2d 100, 835 N.E.2d 801 (generally, proof of elements of Consumer Fraud Act involve factual questions and determinations). Moreover,

-21-

our conclusion is consistent with the requirement that the Consumer Fraud Act be construed liberally to promote its purpose. *Robinson,* 201 Ill. 2d at 417, 775 N.E.2d 951." *Ramirez v. Smart Corp.*, 371 Ill. App. 3d 797, 807, 863 N.E.2d 800, 812 (2007).

I disagree with the majority's conclusion that the existence of an express contract in which plaintiff agrees to pay for indirect professional services is dispositive of plaintiff's claims. The majority's reliance on plaintiff's agreement "to pay for all direct and indirect services provided to him by independent physicians" (slip order at 14-15) is misplaced. Nothing in the language of the authorization of treatment obligated him to pay a *pro rata* share of professional services the pathology group renders to the hospital or to all of its patients by, among its many other general duties, supervising the laboratory or being on call to review any patients' results. The clear import of the contract is that the patient agrees to pay for services provided *to him*, not to anyone else.

Plaintiff has stated facts from which the trier of fact could reasonably find that the parties do not have a valid contract for a separate (arguably second) payment to the pathology group for its general services. Even if the parties did enter such a contract, for the reasons I have provided, a reasonable trier of fact could find that requiring a patient to pay for those general services in fact violates the MPA and, therefore constitutes consumer fraud.

Accordingly, I would also find that plaintiff has stated a cause of action for unjust enrichment.

"The doctrine of unjust enrichment underlies a number of legal and equitable actions and remedies. [Citation.] *** '[I]t is a condition that may be brought about by unlawful or improper conduct as defined by law, such as fraud *** and may be redressed by a cause

-22-

of action based upon that improper conduct.' [Citation.]" *Martis v. Grinnell Mutual Reinsurance Co.*, ___ Ill. App. 3d ___, ___,___ N.E.2d ___, ___ (No. 3–08–0004 2009).

A reasonable trier of fact could find that defendants' billing practice requires patients to pay for services that the group does not actually provide to the patient but to the hospital in the form of "supervisory services" of the hospital's laboratories which they are required by law to maintain. See *Central States Health & Welfare Fund*, 71 F. 3d at 1253. A reasonable trier of fact could, therefore, also find that the cost of the pathology group's "supervisory services" is subsumed in the hospital's "costs in furnishing *** technician's service involved with [the] tests" (slip order at 3). The hospital bills its patients separately from the pathology group for its costs in furnishing technician's service involved with laboratory tests. If defendants have billed plaintiff twice for the same service, or retained plaintiff's payment by violating the public policy embodied in the MPA, then a reasonable trier of fact could also find that the defendants have been unjustly enriched.

Accordingly, for all of the foregoing reasons, I would reverse the trial court's order dismissing plaintiff's complaint and remand for further proceedings.