In re MARRIAGE OF STERLING SIMMONS, Petitioner-Appellant, and JENNIFER SIMMONS, Respondent-Appellee.

First District (3rd Division)   Nos. 1—03—2284, 1—03—2348 cons.

Opinion filed February 16, 2005.—Rehearing denied March 15, 2005.

944

Robert E. Lehrer and Diane L. Redleaf, both of Lehrer & Redleaf, of Chicago, for appellant.

Peter Burban and Arletta J. Markham, both of Chicago, for appellee.

Patrick T. Murphy, Public Guardian, of Chicago (Charles P. Golbert and Christopher J. Williams, of counsel), guardian *ad litem*.

JUSTICE SOUTH delivered the opinion of the court:

Petitioner, Sterling Robert Simmons, and the minor child respondent, through his child-representative, Patrick T. Murphy, the Cook County Public Guardian, have filed these consolidated appeals arising from an order of the circuit court of Cook County which denied the petition for dissolution marriage; declared that the marriage between petitioner and respondent, Jennifer Simmons, was invalid; awarded respondent sole care and custody of the minor child; held that petitioner lacked standing to seek custody of the child; terminated petitioner's parental rights; held that the minor child's constitutional rights were protected; and denied the minor child's motion for declaratory judgment.

## FACTUAL BACKGROUND

Petitioner was born a female on March 31, 1959, and given the name of Bessie Cornelia Lewis. At a very young age, he[1] began experiencing a great discomfort with his female anatomy and became convinced that he was actually a boy who had been born into the body of a girl. This condition is commonly referred to in the psychiatric field as gender dysphoria or gender identity disorder. A person suffering from gender dysphoria is uncomfortable with his assigned or genetic sex and has a preoccupation with ridding himself of the physical characteristics of that assigned or genetic sex. To that end, petitioner began taking testosterone, the male hormone, to alter his appearance and started going by the name of Sterling Robert Simmons. He has been taking testosterone since he was 21 years old, and as a result thereof he now has the outward appearance of a man, which includes facial and body hair, male pattern baldness, a deep voice, a hypertrophied clitoris, and increased muscle and body mass.

Petitioner and respondent participated in a wedding ceremony on August 10, 1985, and a certificate of marriage was issued by the county clerk of Cook County on August 29, 1985. In 1991, they decided to have a child, and it was agreed that respondent would undergo artificial insemination. As a result of that procedure, respondent gave birth to the minor child on July 20, 1992, and petitioner is listed as the father on the child's birth certificate.

---

[1]Throughout this opinion, we shall refer to petitioner as "He." This is done out of respect for petitioner and has no legal significance.

On July 31, 1991, petitioner underwent a total abdominal hysterectomy and a bilateral salpingo-oophorectomy, which removed his uterus, fallopian tubes and ovaries. However, he still to this day retains all of his external female genitalia, which includes a vagina, labia, a hypertrophied clitoris, and breasts.

In 1994, petitioner sought to obtain a new birth certificate which would designate his sex as "male." In accordance with the Vital Records Act (410 ILCS 535/1 *et seq.* (West 2002)), Dr. Raymond McDermott, petitioner's treating physician who specializes in obstetrics and gynecology, submitted an "Affidavit by Physician as to Change of Sex Designation" to the Department of Public Health, attesting that he had performed "certain surgical operations" on petitioner "by reason of which the sex designation" should be changed from "female" to "male." The surgeries to which Dr. McDermott was alluding were the July 31, 1991, hysterectomy and oophorectomy. In October of 1994, the State Registrar issued petitioner a new birth certificate which bears the name of Sterling Robert Simmons and the gender designation of "male." The original birth certificate has been placed under seal and can only be opened by court order. Additionally, petitioner's name has been legally changed by court order to Sterling Robert Simmons.

The relationship between the parties was quite tumultuous and began to deteriorate throughout the years. On August 24, 1998, petitioner filed a petition for dissolution of marriage in which he sought, *inter alia,* temporary and permanent sole care and custody of the minor child. In her answer, respondent alleged that petitioner lacked standing to assert custody rights over the minor child because their same-sex marriage was invalid under Illinois law, and he was neither the biological nor adoptive parent. A trial was conducted on the petition, and the minor child was represented throughout the proceedings by a guardian *ad litem* and the office of the Public Guardian. At the conclusion of the trial, the court denied the petition for dissolution of marriage on the grounds that there was no marriage to dissolve since it was void *ab initio* as a same-sex marriage. The court also awarded sole custody of the minor child to respondent and declared that petitioner lacked parental rights or standing to seek custody. However, the court did grant petitioner visitation rights. While petitioner and the minor child appeal from the order, neither they nor respondent appeals that portion of the order which grants him visitation rights.

Petitioner and the minor child have raised several issues for our consideration: (1) whether the trial court erred in holding that petitioner is a woman and not legally male and, therefore, not legally

married to respondent, who is also a woman; (2) whether the trial court erred in holding that petitioner is not a legal parent under the Illinois Parentage Act (750 ILCS 40/1 *et seq.* (West 2002)), the Illinois Parentage Act of 1984 (750 ILCS 45/1 *et seq.* (West 2002)), the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/101 *et seq.* (West 2002)), or common law; (3) whether respondent is barred from challenging petitioner's parentage of the minor child under the doctrines of equitable estoppel and *laches* and the statute of limitations as set forth in the Illinois Parentage Act; (4) whether the minor child can bar respondent from attacking the validity of petitioner's parentage as an intended third-party beneficiary to his parents' artificial insemination agreement; (5) whether the trial court's finding that petitioner is not the legal father of the minor child violates the minor child's constitutional rights to equal protection and due process; and (6) whether petitioner should be given standing as a parent to seek custody of the minor child under equitable or *de facto* parentage theories.

## DISCUSSION

■ Under the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/101 *et seq.* (West 2002)), while a marriage between a man and a woman is valid (750 ILCS 5/201 (West 2002)), a marriage between two individuals of the same sex is prohibited (750 ILCS 5/212(a)(5) (West 2002)). However, parties to a marriage prohibited under section 212 who cohabit after removal of the impediment are lawfully married as of the date of the removal of the impediment. 750 ILCS 5/212(b) (West 2002).

Petitioner challenges the trial court's conclusion that he is a female and not legally male. Petitioner was diagnosed as a transsexual male in his late teens and began undergoing sex-reassignment treatments.

Petitioner maintains that he is male, that his marriage to respondent was valid, and that the trial court's conclusion that the marriage is invalid on the basis that he is a female was against the manifest weight of the evidence.

The decision of the trial court following a bench trial should be overturned only if it is against the manifest weight of the evidence. *In re Marriage of Kendra*, 351 Ill. App. 3d 826, 829 (2004). A decision is against the manifest weight of the evidence when the opposite conclusion is apparent or when the ruling is unreasonably arbitrary or not based on the evidence. *Judgment Services Corp. v. Sullivan*, 321 Ill. App. 3d 151, 154 (2001). Under the Marriage Act, the formalities for a lawful marriage require a marriage between a man and a woman to be licensed, solemnized and registered as provided in the Marriage Act. 750 ILCS 5/201 (West 2002).

Dr. Laurence Levin, respondent's expert in the field of gender reassignment, testified that while petitioner presents the physical appearance of a male, he has clear, normal female external genitalia and breast tissue. Dr. Frederic Ettner, petitioner's expert and a member of the Harry Benjamin International Gender Dysphoria Association, has treated hundreds of transsexuals during his medical career and described petitioner as a healthy male with male pattern baldness, the musculature of a male, facial and male body hair, and a male torso, but who still has female genitals, including atrophic or dysfunctional female breasts, atrophic labia, an enlarged clitoris, and a vagina. Dr. McDermott, while not an expert in the field of sexual or gender reassignment, testified that petitioner is still a female even after the hysterectomy and oophorectomy, and that those surgeries were never intended to be part of the sex-reassignment process. He admitted that the only reason he signed the physician's affidavit in connection with the issuance of the new birth certificate was to "help out" petitioner and make it easier for him to legally change his sex from female to male. All of the physicians testified that there were other surgeries which had to be done on petitioner before he could be considered completely sexually reassigned, which would include a vaginectomy, reduction mammoplasty, "metoidoiplasty," scrotoplasty, urethroplasty, and phalloplasty.

■ Based upon the testimony of all of the expert witnesses who testified at trial that petitioner still possesses all of his female genitalia, we find that the judgment of the trial court that he is a female and not legally a male was not against the manifest weight of the evidence. Furthermore, once the trial court found that petitioner is a female who was "married" to another female, it had no choice but to deny the petition for dissolution of marriage on the grounds that the same-sex marriage was invalid under Illinois law.

Petitioner argues that even if the marriage was invalid at the time of the marriage ceremony in 1985, it subsequently became valid on July 31, 1991, when he underwent the hysterectomy and oophorectomy. He cites section 212(b) of the Marriage Act as support for his contention which provides that parties to a marriage prohibited under this section who cohabit after removal of the impediment are lawfully married as of the date of the removal of the impediment. 750 ILCS 5/212(b) (West 2002). Petitioner maintains that on July 31, 1991, the "impediment" was removed and that he and respondent cohabited after removal of the impediment. However, contrary to petitioner's contention, the "impediment" has never been removed because while he has undergone surgeries to remove his internal female organs, he still possesses all of his external female genitalia and requires additional surgeries before sex reassignment can be considered completed.

Petitioner further contends that Illinois has officially acknowledged that he was sexually reassigned when the State Registrar issued him a new birth certificate designating his sex as "male." Under the Vital Records Act (410 ILCS 535/1 *et seq.* (West 2002)), for a person born in this state, the State Registrar of Vital Records shall establish a new certificate of birth when he receives:

> "An affidavit by a physician that he has performed an operation on a person, and that by reason of the operation the sex designation on such person's birth record should be changed. The State Registrar of Vital Records may make any investigation or require any further information he deems necessary." 410 ILCS 535/17(d) (West 2002).

Pursuant to this statute, Dr. McDermott filled out and submitted the physician's affidavit which stated that he had performed "certain surgical operations" on petitioner by reason of which the sex designation of petitioner should be changed from female to male. However, at trial, he admitted that the only reason he filled out the affidavit was to "help out" petitioner. While Dr. McDermott characterized petitioner's surgery as part of the sex-change procedure on the one hand, he later admitted at trial that the sole reason behind the surgeries was petitioner's history of endocrine dysfunction and hyperstimulation with potential malignancy due to his long-term use of testosterone. Even if we were to accept petitioner's argument that the surgeries were part of his sex reassignment, it is clear that the reassignment has never been completed. According to Dr. McDermott and even Dr. Ettner, the sex-change procedure is still "in process" and has not been completed, and there are still other procedures which must be done in order to complete the sex reassignment or change. Therefore, the mere issuance of a new birth certificate cannot, legally speaking, make petitioner a male. Furthermore, it is unlikely that the State Registrar would have issued the new birth certificate had the information been disclosed to him that the individual seeking the new "male" birth certificate still had external female genitalia. Were we to accept petitioner's argument that the mere issuance of the new birth certificate conclusively establishes that he is now a man who may legally marry a woman in this state, we would also be compelled to declare that the marriage is valid based upon the mere fact that the county clerk of Cook County issued the parties a marriage license in 1985. The issuance of marriage licenses and new birth certificates are ministerial acts that generally do not involve fact-finding. Here, there was no fact-finding whatsoever on the part of the State Registrar of Vital Records. While the State Registrar had the right to conduct an investigation and make inquiries upon receipt of the application for a

950

new birth certificate, no such investigation was ever conducted. The courts, on the other hand, are fact-finding bodies, and in this particular instance the trial court found facts which the State Registrar did not find and ruled accordingly.

Petitioner maintains that even if we find his marriage is invalid, the artificial insemination agreement which he, respondent, and the physician signed pursuant to the Illinois Parentage Act (Parentage Act) (750 ILCS 40/1 *et seq.* (West 2002)) confers standing upon him to seek custody of the minor child.

■ The Parentage Act sets forth certain procedures for couples who wish to have children through artificial insemination:

> "If, under the supervision of a licensed physician and with the consent of her husband, a wife is inseminated artificially with se-men donated by a man not her husband, the husband shall be treated in law as if he were the natural father of a child thereby conceived. The husband's consent must be in writing executed and acknowledged by both the husband and wife. The physician who is to perform the technique shall certify their signatures and the date of the insemination, and file the husband's consent in the medical record where it shall be kept confidential and held by the patient's physician. However, the physician's failure to do so shall not affect the legal relationship between father and child." 750 ILCS 40/3(a) (West 2002).

On April 18, 1991, the parties went to a fertility clinic and entered into a written artificial insemination agreement with a physician to perform "one or more, if necessary," artificial insemination procedures with sperm from a stranger-donor. That agreement stated, in relevant part:

> "It is further agreed that [at] the moment of conception the *husband* hereby accepts the act as his own, and agrees:
>
> 1. That such child or children so produced are his own legitimate child or children and are heirs of his body; and
>
> 2. That he hereby completely waives forever any right which he might have to disclaim such child or children as his own; and
>
> 3. That such child or children so procedure [*sic*] are, and shall be considered to be, in all respects including descent of property, child or children of his own body." (Emphasis added.)

That agreement was signed by petitioner as "husband," respondent as "wife," and the physician who performed the artificial insemination procedure.

This issue requires us to determine whether section 3 of the Parentage Act includes transsexual males who have signed artificial insemination agreements as husbands in an invalid same-sex mar-riage. We find that it does not.

Issues of statutory construction are reviewed *de novo. In re D.D.*, 196 Ill. 2d 405, 418 (2001). The primary objective in construing a statute is to determine and give effect to the legislature's intent. *Yang v. City of Chicago*, 195 Ill. 2d 96, 103 (2001). This effort properly begins with an examination of the statutory language. *Texaco-Cities Service Pipeline Co. v. McGaw*, 182 Ill. 2d 262, 270 (1998). Each undefined word in the statute must be ascribed its ordinary and popularly understood meaning. *Texaco-Cities*, 182 Ill. 2d at 270.

■ It is clear from reading the statute in question that the legislature intended that this statute apply to "husbands" and "wives" as those terms are ordinarily and popularly understood. Petitioner and respondent signed the agreement as "husband" and "wife." However, inasmuch as we have upheld the trial court's determination that petitioner was not a "husband" and respondent was not a "wife" due to the invalidity of their marriage, we are compelled to find that the agreement is also invalid. Furthermore, the physician who performed the artificial insemination procedure failed to comply with the statute in that he did not certify the signatures and the date of the insemination. Under the statute, the physician is required to certify the date of insemination in order to make the consent valid. 750 ILCS 40/3(a) (West 2002). In this case, the only date that appears on the consent form is April 18, 1991, but the record does not disclose the actual date of insemination because it was never certified by the physician. Respondent testified that the first procedure did not occur until approximately one month after the April 18, 1991, agreement was signed and that she did not become pregnant until after the sixth procedure, some several months later. We find that the artificial insemination agreement did not comport with the statute and was, therefore, invalid on those grounds as well. See *In re Marriage of Witbeck-Wildhagen*, 281 Ill. App. 3d 502, 506 (1996) (wherein the Fourth District stated in *dicta* that the husband's written consent is required each time the wife is to undergo an insemination procedure).

■ Petitioner further argues that even if the agreement is held to be invalid, section 5 of the Illinois Parentage Act of 1984 (Parentage Act of 1984) (750 ILCS 45/5 (West 2002)) grants a presumption of parenthood, and that a child born from artificial insemination to two married parents retains his right to parentage with both parents even if the marriage is subsequently held invalid.

Section 5 of the Parentage Act of 1984 states in relevant part:

"(a) A man is presumed to be the natural father of a child if:

(1) he and the child's natural mother are or have been married to each other, even though the marriage is or could be declared invalid, and the child is born or conceived during such marriage;

(2) after the child's birth, he and the child's natural mother have married each other, even though the marriage is or could be declared invalid, and he is named, with his written consent, as the child's father on the child birth certificate[.]" 750 ILCS 45/5(a)(1), (a)(2) (West 2002).

While we agree with petitioner's interpretation of the statute, we must conclude that it does not apply to him. That section, which confers a presumption on a "man" to be the natural father of a child even after a marriage has been declared invalid, is based on the premise that the parties who are involved are a man and a woman. As we have previously determined, petitioner is not a man within the meaning of the statute and that, therefore, the statute does not apply.

■ Petitioner further maintains that even if we find that the Parentage Act, the Parentage Act of 1984, and the Marriage Act do not apply, he can still be considered a legal parent under common law. In support of his argument, he relies on *In re Parentage of M.J.*, 203 Ill. 2d 526 (2003). In that case, petitioner and respondent, a woman and a man respectively, were not married to each other but agreed to have a child through artificial insemination because respondent was sterile. They did not sign an artificial insemination consent agreement, but the respondent made oral promises to petitioner that he would always provide financial support for the child, and he paid for the procedure. Petitioner subsequently gave birth to twins, and the respondent, as promised, provided financial support for the children until their relationship ended after she discovered that he was married to someone else. At that time, respondent withdrew his financial support, and petitioner filed a three-count complaint to establish paternity and impose a support obligation for the benefit of their children. The first count alleged the breach of an oral agreement, and the second count alleged promissory estoppel. Both counts alleged that respondent made an offer to petitioner that he would treat the child/ children as his own and provide financial support for them and that but for these representations she never would have undergone artificial insemination. The third count sought a request for a declaration of paternity and establishment of child support pursuant to the Parentage Act of 1984. Our supreme court held that because written consent is a prerequisite for invoking the protections of the Parentage Act, plaintiff could not maintain an action under it. However, the court also found that there was nothing in the Parentage Act of 1984 that prohibited common law actions to establish parental responsibility. *M.J.*, 203 Ill. 2d at 531, 539.

While *M.J.* does stand for the proposition that an action can be brought under common law theories for financial support, it does not

stand for the proposition that questions of paternity or custody may be brought under common law theories of breach of contract and promissory estoppel. In fact, the plaintiff in *M.J.* did not prevail on her request for a declaration of paternity in count III of her complaint, as the court held that such an issue can only be addressed under the Parentage Act of 1984. We read *M.J.* to stand for the proposition that while matters of financial support and parental responsibility may be brought under common law theories of breach of an oral contract and promissory estoppel, questions of paternity and custody must still be brought under the Parentage Act of 1984. Since we have previously determined that petitioner lacks standing under the Parentage Act of 1984, this argument must fail.

■ Petitioner also contends that he should be declared the *de facto* parent based upon his long, loving and close relationship with the minor child, who has always known him as his "Daddy."

In *In re Visitation With C.B.L.*, 309 Ill. App. 3d 888 (1999), the petitioner, who had engaged in a long-term lesbian relationship with respondent, who had given birth to the minor as a result of artificial insemination, sought an order granting her visitation with the minor child pursuant to the Marriage Act. She argued that she had alleged facts in her petition sufficient to establish her standing as a common law *de facto* parent or as an individual *in loco parentis* to the minor child. *C.B.L.*, 309 Ill. App. 3d at 889-90. On appeal, she abandoned her contention that the allegations within her petition were sufficient to establish her standing under the Marriage Act and contended only that they were sufficient to provide her standing as a common law *de facto* parent or as an individual *in loco parentis* to C.B.L. *C.B.L.*, 309 Ill. App. 3d at 890. This court held that the Marriage Act superseded and supplanted the common law of visitation in Illinois and that, therefore, any standing for visitation must be found solely within that Act. *C.B.L.*, 309 Ill. App. 3d at 891. Since petitioner conceded her lack of standing under the Act, her petition lacked merit. *C.B.L.*, 309 Ill. App. 3d at 894.

The court in *C.B.L.* further stated:

> "Finally, this court is not unmindful of the fact that our evolving social structures have created nontraditional relationships. This court, however, has no authority to ignore the manifest intent of our General Assembly. Who shall have standing to petition for visitation with a minor is an issue of complex social significance. Such an issue demands a comprehensive legislative solution. That solution is provided, by our General Assembly, within [the Marriage Act]." *C.B.L.*, 309 Ill. App. 3d at 894-95.

Similarly, in the instant case, petitioner's standing to seek full

care and custody of the minor child must be found solely within the Marriage Act, the Parentage Act, or the Parentage Act of 1984. Our determination that he lacks such standing under those acts is dispositive of the issue.

■ Finally, petitioner argues that respondent should be barred from contesting his parentage by the doctrines of equitable estoppel and *laches* and the applicable statute of limitations under the Parentage Act of 1984.

Estoppel arises when a party, by his words or conduct, intentionally or through culpable negligence, induces reasonable reliance by another on his representations and thus leads the other, as a result of that reliance, to change his position to his detriment. *Zink v. Maple Investment & Development Corp.*, 247 Ill. App. 3d 1032, 1039 (1993). The purpose of equitable estoppel is to prevent fraud and injustice. *Payne v. Mill Race Inn*, 152 Ill. App. 3d 269, 276 (1987). Equitable estoppel bars a wife from attacking the validity of a joint custody agreement that calls for shared custody of the child and for the husband to pay child support when the wife entered into the agreement, accepted child support and allowed the husband to visit the child, which caused the husband to act as the child's father and to anticipate that his parent-child relationship would continue. See *In re Marriage of Schlam*, 271 Ill. App. 3d 788, 794 (1995).

In the instant case, equitable estoppel cannot apply because no action on the part of respondent can confer standing on petitioner to seek custody. The issue here is not a joint custody agreement but whether the parties' marriage complies with Illinois law or is in contravention of it. Inasmuch as the parties' marriage was void *ab initio*, there is nothing in the law which prohibits respondent from raising that invalidity. It would be illogical to hold that because petitioner and respondent agreed to enter into a marriage prohibited under Illinois law, the state is now obliged to recognize that illegal union and all that flows therefrom simply because respondent participated and acquiesced in it.

*Laches* is the neglect or omission on the part of a complainant to assert a right, taken in conjunction with a lapse of time and other circumstances causing prejudice to any adverse party. *Lincoln-Way Community High School District 210 v. Village of Frankfort*, 51 Ill. App. 3d 602, 611 (1977). The necessary elements of *laches* are delay and prejudice. *Lincoln-Way*, 51 Ill. App. 3d at 611. The statute of limitations found in the Parentage Act of 1984 to which petitioner refers is found in section 8. 750 ILCS 45/8 (West 2002). That section provides that a party who brings an action to declare the nonexistence of the parent and child relationship shall be barred if brought later

than two years after the petitioner obtains knowledge of relevant facts. 750 ILCS 45/8(a)(3) (West 2002).

Petitioner cannot avail himself of any of these theories because he, not respondent, has brought this action. Once the action was filed, respondent could raise whatever defenses she deemed appropriate or legally sound. We know of no case law which stands for the proposition that a respondent is estopped from raising defenses due to *laches* or the statute of limitations. Therefore, petitioner's arguments under estoppel, *laches* and the statute of limitations must fail.

■ The minor child argues that he was the intended third-party beneficiary of the contract entered into between petitioner and respondent and, therefore, has a right to sue under that contract even though he is never a party to it.

A third-party beneficiary may sue under a contract even when not a party to it, provided the benefit of the contract is directed to him, as opposed to being merely incidental. *Gallagher Corp. v. Russ*, 309 Ill. App. 3d 192, 199-200 (1999). It must appear from the language of the contract when properly construed that the contract was made for the direct benefit of the third person and that the benefit was not merely incidental. *Midwest Concrete Products Co. v. La Salle National Bank*, 94 Ill. App. 3d 394, 396 (1981). The argument is that the minor child is the third-party beneficiary under the artificial insemination agreement, particularly in light of the fact that respondent entered into it and acknowledged that the child would be considered petitioner's heir. However, since we have already determined that the agreement is invalid, there can be no contract to enforce, and the minor child cannot be construed as a third-party beneficiary to an invalid, nonexistent contract.

■ Additionally, the Public Guardian argues that the trial court's decision violates the minor child's right to equal protection of the laws under both the Illinois and United States Constitutions. He maintains that the child, as an artificially inseminated child born into an invalid same-sex marriage, is being denied parentage while almost all other children are not.

The Public Guardian cites *Stanley v. Illinois*, 405 U.S. 645, 31 L. Ed. 2d 551, 92 S. Ct. 1208 (1972), where the United States Supreme Court held that all parents, whether married or unmarried, male or female, are constitutionally entitled to a hearing on their fitness before their children could be removed from their custody. Illinois law had previously presumed that unwed fathers were unsuitable and neglectful parents, which the Supreme Court found violated due process. *Stanley*, 405 U.S. at 650, 31 L. Ed. 2d at 551, 92 S. Ct. at 1212. The Supreme Court, however, has never determined whether a child has a

liberty interest symmetrical with that of a natural parent in maintaining his current relationship. *Michael H. v. Gerald D.*, 491 U.S. 110, 130, 105 L. Ed. 2d 91, 110-11, 109 S. Ct. 2333, 2346 (1989). Attempts to assert such a right on behalf of children who have become psychologically attached to a nonparent have not met with success in other jurisdictions. See, *e.g.*, *In re Clausen*, 442 Mich. 648, 502 N.W.2d 649 (1993). Moreover, the Illinois Supreme Court has specifically held that no such liberty interest exists with respect to a child's psychological attachment to a nonbiological parent. See *In re Petition of Kirchner*, 164 Ill. 2d 468 (1995). Accordingly, the Public Guardian's argument here must fail.

Both petitioner and the Public Guardian were granted permission to cite additional authority subsequent to oral argument. They cited the recent supreme court case of *People ex rel. Department of Public Aid v. Smith*, 212 Ill. 2d 389 (2004), in support of their position that a father's acknowledgment of paternity is conclusive under the Parentage Act of 1984. In that case, two days after the child was born, Smith executed a voluntary acknowledgment of paternity. Subsequently, Smith learned through DNA testing that the child was not his biological child. Smith then brought an action to declare the nonexistence of the parent-child relationship under the Parentage Act of 1984. The State's motion to dismiss the action was granted by the trial court, which this court reversed. The supreme court affirmed the trial court's holding, finding that under section 6(d) of the Parentage Act of 1984 (750 ILCS 45/6(d) (West 2002)), a signed acknowledgment of paternity may be challenged in court only on the basis of fraud, duress, or material mistake of fact. *Smith*, 212 Ill. 2d at 405. The court found that Smith's acknowledgment of paternity was not rebuttable. *Smith*, 212 Ill. 2d at 406.

Petitioner and the Public Guardian maintain that *Smith* supports their contention that respondent's acknowledgment of petitioner's paternity in the artificial insemination agreement is conclusive. We disagree and, therefore, reject their argument based upon our previous determination that the artificial insemination agreement was invalid since petitioner has never been a husband within the meaning of the statute.

Accordingly, based upon the foregoing analysis, the judgment of the circuit court is affirmed.

Affirmed.

KARNEZIS, P.J., and HARTMAN, J., concur.