# hILLINOIS OFFICIAL REPORTS
## Appellate Court

---

### *In re Marriage of Mancine*, 2012 IL App (1st) 111138

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF MIKI LOVELAND MANCINE, Petitioner-Appellee, and NICHOLAS F. GANSNER, Respondent-Appellant. |
| District & No. | First District, Fourth Division<br>Docket No. 1-11-1138 |
| Filed | February 2, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In marriage dissolution proceedings between petitioner, who had adopted a child as a single parent shortly before her marriage to respondent, and respondent, who never followed through with the parties' intention that he would adopt the child petitioner had adopted, the trial court properly granted petitioner's motion to dismiss respondent's claim for sole custody of the child she adopted just before the marriage, since Illinois has not adopted the "equitable parent" doctrine, he had no standing as a parent to seek custody under the Illinois Marriage and Dissolution of Marriage Act, the Illinois Parentage Act or the Illinois Parentage Act of 1984, equitable estoppel did not bar a finding that respondent was not a parent due to petitioner's holding him out as the parent of the child, especially when respondent knew he was not the child's biological parent and that formal adoption was necessary, Illinois does not recognize "equitable adoption," there was no contract to support a "contract to adopt" theory, and there was no basis to invoke the *parens patriae* power. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-D-9394; the Hon. Nancy J. Katz, Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed. |
| Counsel on Appeal | Berger/Schatz, of Chicago (Andrew D. Eichner and Myra A. Foutris, of counsel), for appellant. |
| | Beermann, Pritikin, Mirabelli & Swerdlove, LLP, of Chicago (Enrico J. Mirabelli and Amy L. Jonaitis, of counsel), for appellee. |
| Panel | JUSTICE PUCINSKI delivered the judgment of the court, with opinion. Justices Fitzgerald Smith and Sterba concurred in the judgment and opinion. |

## OPINION

¶ 1     In divorce proceedings below, the husband, respondent Nicholas Gansner, sought custody of a minor child, William Gansner, who had been adopted by the mother, petitioner Miki Loveland Mancine, but Nicholas never filed a petition for adoption. The child was not the biological child of either Miki or Nicholas. The circuit court granted Miki's motion to dismiss on the grounds that Nicholas lacked standing. We affirm the dismissal because: (1) Illinois has not adopted the "equitable parent" doctrine and Nicholas has no standing as a parent to seek custody under the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/101 *et seq.* (West 2010)), the Illinois Parentage Act (750 ILCS 40/1 *et seq.* (2010)), or the Illinois Parentage Act of 1984 (750 ILCS 45/1 *et seq.* (West 2010)); (2) equitable estoppel did not apply to bar a finding that Nicholas was not a parent due to Miki's holding out of him as the parent, where the husband was aware at all times that William was not his biological child and that formal adoption was necessary; (3) Illinois does not recognize "equitable adoption" in child custody proceedings and a "contract to adopt" theory did not apply where there was no contract; (4) there was no basis to invoke the *parens patriae* power under the Juvenile Court Act of 1987 (705 ILCS 405/1-1 *et seq.* (West 2010)); and (5) there is no requirement that the child must be adjudicated to have a father and Miki legally adopted the child as a single person.

¶ 2                              BACKGROUND

¶ 3     Miki and Nicholas began dating in the spring of 2008. At that time, Miki was separated from her then-husband, John Mancine. Miki had a one-year-old adopted daughter named Elizabeth and had begun the process of adopting a second child, William, and was matched with a birth mother. Miki and Nicholas decided they would marry in approximately June or July of 2008. Because Miki had already started the adoption process of William as a single

parent before she met Nicholas, Miki and Nicholas were advised by the adoption agent to finish the process of Miki's adoption of William, and then for Nicholas to adopt William as a stepparent after the parties' marriage. At the time, Miki and Nicholas resided in Wisconsin, where unmarried couples cannot simultaneously adopt a child. See Wis. Stat. Ann. § 48.82 (West 2008).

¶ 4        William was born on August 5, 2008, and his birth certificate reflected the name "William Michael Gansner." In early September 2008, the adoption agent visited Miki and Nicholas to update the home study completed in January 2008 because Nicholas had moved in with Miki and was co-parenting William. Miki's adoption of William was not yet finalized due to the six-month statutory waiting period. In the adoption agent's report of February 27, 2009, the agent noted that Miki named Nicholas as the sole guardian of William and any future child she has, and named her parents as alternate guardians. Nicholas took care of William, including diaper changes and feedings. On November 2, 2008, William was baptized. The church record for the baptism listed William's "parents" as Nicholas and Miki. Nicholas and Miki became formally engaged in December 2008.

¶ 5        William's adoption by Miki as a single adult was finalized in Wisconsin on March 4, 2009. The adoption papers identified William as "William Michael Gansner." Nicholas and Miki got married in May 2009. It was both Nicholas' and Miki's intent that Nicholas formally adopt William as a stepparent after their wedding. Miki had contacted William's adoption agent before their wedding and arranged for her to visit them immediately following the wedding to perform a screening for Nicholas' adoption of William. In June 2009 the adoption agent performed the stepparent adoption screening of Nicholas. The agent's report of June 9, 2009, reflected that the adoption agency intended to support the granting of Nicholas' stepparent adoption petition. In Nicholas' affidavit in support of his pleadings, he attached an e-mail from the adoption agent to Nicholas dated August 6, 2010, informing Nicholas that he was free to file his stepparent adoption petition, and he averred that this is a true and correct copy of the e-mail.

¶ 6        At that time, Nicholas and Miki had already started the process of adopting yet another child, Henry, and were in the process of moving from Wisconsin to Chicago, Illinois, to be closer to Miki's parents. Nicholas alleges that he was under the impression that he and Miki had to assemble a number of documents to accompany his adoption petition. Later, he learned that he simply had to provide a form petition and include a copy of the order of Miki's adoption of William. Nicholas alleges in his brief that "[a]s a result of all of these factors, the ministerial act of filing the stepparent adoption papers just never happened." It is undisputed that respondent never filed a petition to adopt William.

¶ 7        Nicholas and Miki moved to Chicago with Elizabeth and William. Henry was born on September 16, 2009. Nicholas alleges that since he was out of work and Miki was traveling for her job, he was the primary caretaker of the three children. Nicholas avers in his affidavit that on August 6, 2009, Miki e-mailed him asking, "Have you made any progress toward adopting William???? I would like you to take care of that ASAP," and telling Nicholas to "call Carol Gapen from law center for children and families."

¶ 8        Nicholas eventually became employed in a full-time position as an assistant Attorney

General for the State of Illinois. Nicholas maintains he continued to act as the three children's primary caretaker and took Elizabeth and William to day care and Henry to Miki's parents' house every morning. In the evenings, Miki's mother and a nanny would pick up the children from day care and bring them home to be with Nicholas. Nicholas was listed as the children's parent at their day care facility. According to Nicholas, Miki always held out William as Nicholas' child and held out herself, Nicholas, Elizabeth, William and Henry as "the Gansner family."

¶ 9    Miki filed a petition for dissolution of marriage and served Nicholas with summons for dissolution of marriage on September 24, 2010. In Miki's petition, she alleged that she and Nicholas had only one child, Henry, and that Nicholas was a fit and proper person to share joint custody of Henry. On December 6, 2010, Nicholas filed his response to Miki's petition for dissolution of marriage and his counterpetition for dissolution of marriage. In both pleadings, Nicholas sought sole custody of William and Henry. On December 16, 2010, Miki filed her motions to dismiss Nicholas' claim for sole custody of William in his response and counter-petition, pursuant to section 2-619(a)(9) of the Illinois Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2010)), based on the fact that William had no standing to seek custody of William. On March 14, 2011, the circuit court issued its ruling granting Miki's motions to dismiss, followed by a written order. Nicholas timely appealed.

¶ 10                                          ANALYSIS

¶ 11    The issue presented by the present appeal is whether a nonbiological father has standing to seek custody of a child he intended to adopt but never formally adopted. Nicholas argues that the court erred in granting Miki's section 2-619 motion to dismiss Nicholas' request for custody based on his lack of standing due to the fact that he never adopted William. "Standing in Illinois requires 'some injury in fact to a legally cognizable interest.' " *Preferred Personnel Services, Inc. v. Meltzer, Purtill & Stelle, LLC*, 387 Ill. App. 3d 933, 938 (2009) (quoting *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 492 (1988)).

¶ 12    Nicholas does not dispute that he never adopted William and thus is not his legal parent. Rather, Nicholas makes the following equitable arguments that he should have standing to seek custody: (1) Illinois courts should revisit the concept of "equitable parent" and Nicholas should be recognized as William's "equitable parent"; (2) that Miki should be equitably estopped from challenging Nicholas' request for custody due to her own representations that Nicholas was William's father; (3) that his "equitable adoption" of William should be recognized, even though he did not undertake the "ministerial act" of filing a petition for adoption; (4) that the court should apply a plenary *parens patriae* power to award Nicholas custody; and (5) the court's adjudication that Nicholas is not William's parent should not be allowed to stand because it leaves William fatherless. Where the facts in a case are uncontroverted, we review a trial court's order granting a section 2-619 motion to dismiss (735 ILCS 5/2-619 (West 2010)) *de novo. Boelkes v. Harlem Consolidated School District No. 122*, 363 Ill. App. 3d 551, 554 (2006). Also, generally the question of standing is reviewed *de novo. In re Guardianship of K.R.J.*, 405 Ill. App. 3d 527, 535 (2010). For the

reasons that follow, we find Nicholas' arguments are not well grounded and affirm the circuit court's dismissal.

¶ 13                                    I. "Equitable Parent"

¶ 14     Respondent first argues that the circuit court erred in declining to find that he was the equitable parent since he was the child's primary caregiver since birth, it would be in the child's best interest, and "the time has come to revisit the equitable parent doctrine in Illinois." Nicholas argues that he acted as William's father in every way and has developed a bond with William such that he should be recognized as William's "equitable parent."

¶ 15     Nicholas' brief is replete with assertions of his caretaking of and emotions toward William. However, as Nicholas acknowledges, Illinois has not adopted the "equitable parent" doctrine. As the Fourth District has noted, "the theory of making a man who is not the biological father of a child an 'equitable parent' under certain appealing circumstances has never been recognized in Illinois." *In re A.K.*, 250 Ill. App. 3d 981, 986 (1993). The superior rights doctrine, which holds that parents have the superior right to care, custody, and control of their children, is incorporated in the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/101 *et seq*. (West 2010)). *In re R.L.S.*, 218 Ill. 2d 428, 434 (2006). Nicholas argues that "[t]his case presents fewer implications for the superior rights doctrine than most" because in this case neither party is William's biological parent.

¶ 16     However, a petitioner's standing to seek full care and custody of a minor child is found solely within the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/101 *et seq*. (West 2010)), the Illinois Parentage Act (750 ILCS 40/1 *et seq*. (2010)), or the Illinois Parentage Act of 1984 (750 ILCS 45/1 *et seq*. (West 2010)). *In re Marriage of Simmons*, 355 Ill. App. 3d 942, 953-54 (2005). In enacting the Parentage Act, the General Assembly established a "statutory mechanism that serves to legally establish parent and child relationships in Illinois." (Internal quotation marks omitted.) *J.S.A. v. M.H.*, 224 Ill. 2d 182, 198 (2007) (quoting *In re Estate of Poole*, 207 Ill. 2d 393, 404 (2003)). "[T]he Parentage Act defines the term 'parent and child relationship' as 'the legal relationship existing between a child and his natural or *adoptive parents* incident to which the law confers or imposes rights, privileges, duties and obligations.' " (Emphasis added.) *J.S.A.*, 224 Ill. 2d at 198 (quoting 750 ILCS 45/2 (West 1998)). Thus, only Miki has a parent and child relationship with William, as she is William's adoptive parent. Nicholas is not a parent, as he is neither a natural nor an adoptive parent.

¶ 17     The statutory scheme already provides a route for nonparents to seek custody. However, that route is not available to Nicholas. Section 601(b)(2) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/101 *et seq*. (West 2010)) provides that a custody proceeding may be commenced by a nonparent " 'by filing a petition for custody of the child in the county in which he is permanently resident or found, *but only if he is not in the physical custody of one of his parents*.' " (Emphasis added.) *In re R.L.S.*, 218 Ill. 2d 428, 434 (2006) (quoting 750 ILCS 5/601(b)(2) (West 2004)). Our supreme court has interpreted this section as a standing requirement for nonparents. *In re R.L.S.*, 218 Ill. 2d at 434-35 (citing *In re Custody of Peterson*, 112 Ill. 2d 48, 52 (1986)). " 'Standing' in this context refers to a

statutory requirement the nonparent must meet before the trial court proceeds to the merits of the petition for custody." *In re Custody of M.C.C.*, 383 Ill. App. 3d 913, 917 (2008) (citing *In re R.L.S.*, 218 Ill. 2d at 436).[1]

¶ 18    Under the facts of this case, William was in the physical custody of Miki who, as an adoptive parent, is the only legal parent William has. As a nonparent, Nicholas thus has no standing to seek custody of William. Nicholas nevertheless relies upon *Koelle v. Zwiren*, 284 Ill. App. 3d 778 (1996), for the proposition that "awarding custody or visitation rights to a nonparent over the objection of a natural parent is permissible if it would be in the best interests of the child." *Koelle*, 284 Ill. App. 3d at 784. However, this is a general recognition that exceptions exist where a nonparent may be awarded custody or visitation, none of which are present in this case. Also, *Koelle* is readily distinguishable and not applicable to the facts in this case. In *Koelle*, the plaintiff was deceived into believing he was the child's biological father. *Koelle*, 284 Ill. App. 3d at 785. Here, there is no question that Nicholas at all times was aware he was not William's biological father. Further, the plaintiff in *Koelle* sought only visitation privileges (*Koelle*, 284 Ill. App. 3d at 785), not custody, as Nicholas is seeking in this case.

¶ 19    In *Koelle*, we discussed *In re Marriage of Roberts*, 271 Ill. App. 3d 972 (1995), also cited by Nicholas. In *In re Marriage of Roberts*, 271 Ill. App. 3d 972 (1995), the circuit court applied the concept of "equitable parent" and held that a husband's standing in a custody battle was determined by his status of father at the time of the request for relief, even though it was discovered later that he was not the biological father of the child, and awarded custody to the husband. *In re Marriage of Roberts*, 271 Ill. App. 3d at 980. The court in *Roberts* expressly refused to apply the equitable parent doctrine. *In re Marriage of Roberts*, 271 Ill. App. 3d at 980. However, the appellate court found that awarding custody to the petitioner was permissible even though he was not the natural or adoptive father, but that the circuit court should have applied the best interests of the child standard. *In re Marriage of Roberts*, 271 Ill. App. 3d at 980.

¶ 20    Nicholas would apply the rationale of *In re Marriage of Roberts* to this case. However, in *Roberts*, the child was born during the marriage, and thus there was a presumption of paternity under the Illinois Parentage Act of 1984 (*In re Marriage of Roberts*, 271 Ill. App. 3d at 978 (citing 750 ILCS 45/5 (West 1992))), and the petitioner's wife misled him to believe for a time that the child was his. *In re Marriage of Roberts*, 271 Ill. App. 3d at 978-79. Here, there was no presumption of paternity and Nicholas was aware at all times he was not the biological father and needed to adopt William.

¶ 21    Nicholas also cites to *In re Custody of Townsend*, 86 Ill. 2d 502 (1981). However, *Townsend* merely recognized that a natural parent's superior right to custody is not absolute

---

[1] In *In re A.W.J.*, 197 Ill. 2d 492 (2001), the Illinois Supreme Court held that, when used in this sense, "standing" does not have the traditional meaning of a requirement that a litigant has a justiciable interest in a controversy; rather, it merely refers to a threshold issue that must be determined before the court may proceed to a "best interests" determination. *In re A.W.J.*, 197 Ill. 2d at 496-97.

but is subject to the best interests of the child. *In re Custody of Townsend*, 86 Ill. 2d at 508. In *Townsend*, a natural father of a child filed a petition for custody of the child who had been in the custody of her half sister since the mother had been incarcerated and the circuit court granted custody to the half sister. Thus, the nonparent had standing to seek custody because the child was not in the custody of the natural parent.

¶ 22 Nicholas also cites to *Cebrzynski v. Cebrzynski*, 63 Ill. App. 3d 66 (1978), where an award of custody of a child to a nonparent stepmother over a biological mother was affirmed. However, in that case the nonparent had physical custody of the children, while the natural parent did not have custody. Custody of the children was awarded to the father in his divorce from the biological mother, with the mother having only visitation rights, and after the husband died the children continued residing with the stepmother in her custody. *Cebrzynski*, 63 Ill. App. 3d at 69. Thus, *Cebrzynski* is easily distinguishable and does not apply here. As in *Townsend*, the children were not in the physical custody of the parent. Here, William was in Miki's physical custody. As we have pointed out above, a nonparent may seek custody of a child only when the child is not in the physical custody of one of his parents. 750 ILCS 5/601(b)(2) (West 2010).

¶ 23 None of Nicholas' citations support awarding custody to a nonparent when the parent has physical custody of the child. While we are not unsympathetic to the litany of the many acts and emotions of Nicholas toward William, the fact remains that he did not adopt William and has no standing to seek custody as a nonparent otherwise. The circuit court did not err in granting the section 2-619 motion to dismiss.

¶ 24                                    II. Equitable Estoppel

¶ 25 Nicholas also argues the circuit court erred when it held Miki was not equitably estopped from denying that Nicholas is William's father where petitioner's words and conduct intentionally induced respondent to reasonably believe he was William's father. Among the many acts cited by respondent, he also alleges he performed a vasectomy in reliance on petitioner's misrepresentation.

¶ 26 "To establish equitable estoppel, the party claiming estoppel must demonstrate that: (1) the other person misrepresented or concealed material facts; (2) the other person knew at the time he or she made the representations that they were untrue; (3) the party claiming estoppel did not know that the representations were untrue when they were made and when they were acted upon; (4) the other person intended or reasonably expected that the party claiming estoppel would act upon the representations; (5) the party claiming estoppel reasonably relied upon the representations in good faith to his or her detriment; and (6) the party claiming estoppel would be prejudiced by his or her reliance on the representations if the other person is permitted to deny the truth thereof." *Geddes v. Mill Creek Country Club, Inc.*, 196 Ill. 2d 302, 313-14 (2001) (citing *Vaughn v. Speaker*, 126 Ill. 2d 150, 162-63 (1988)). We will not reverse a trial court's decision on the issue of estoppel unless it is against the manifest weight of the evidence. *In re Joseph B.*, 258 Ill. App. 3d 954, 975 (1994) (citing *Feiler v. Covenant Medical Center of Champaign-Urbana*, 232 Ill. App. 3d 1088, 1093 (1992)).

¶ 27 Nicholas argues that "Miki knowingly and intentionally misrepresented the nature of

Nicholas' and William's relationship–that is, she claimed that it was *** that of a parent and a child." However, such an assertion is contrary to the undisputed fact that Nicholas knew at all times that he was not the biological father of William and that formal adoption was necessary. Equitable estoppel is available only if a party has relied upon another party's misrepresentation or concealment of a material fact. *McInerney v. Charter Golf, Inc.*, 176 Ill. 2d 482, 492 (1997). "Absent such misrepresentation or fraud, the defense is not available." *McInerney*, 176 Ill. 2d at 492 (citing *Ozier v. Haines*, 411 Ill. 160, 165 (1952); *Ceres Illinois, Inc. v. Illinois Scrap Processing, Inc.*, 114 Ill. 2d 133, 148 (1986)). Additionally, in order to assert equitable estoppel the representation must regard a material fact, not a matter of law; "[a] representation on a matter of law will ordinarily be insufficient to support the basis of an estoppel." *In re Joseph B.*, 258 Ill. App. 3d at 977.

¶ 28 Here, Miki did not misrepresent the material fact that Nicholas would have to undergo the formal adoption process in order to be William's legal parent. Both Miki and William contemplated Nicholas' formal adoption. At no time did Miki claim that Nicholas could be William's legal parent without formal adoption, nor does Nicholas even claim this was the case. There is no reliance by Nicholas upon Miki's alleged acts and statements for his failure to complete the formal adoption process. In fact, Miki herself urged Nicholas to file the adoption petition for William, by Nicholas' own admission in his affidavit. Instead, Nicholas claims he delayed filing the adoption petition because he was under the assumption that the petition required much paperwork.

¶ 29 However, even assuming *arguendo* that Nicholas purportedly relied on Miki's alleged acts of holding him out as William's father in not undergoing the formal adoption process, we hold such reliance was not reasonable. A party can invoke the doctrine of equitable estoppel only when she reasonably relies on another party's conduct or representations in forbearing suit. *In re Joseph B.*, 258 Ill. App. 3d at 975 (citing *In re Custody of D.A.*, 201 Ill. App. 3d 810, 820 (1990); *Kapp v. Alexander*, 218 Ill. App. 3d 412 (1991)). See also *In re Custody of D.A.*, 201 Ill. App. 3d 810, 821 (1990) (holding the father's petition to establish paternity rights was barred by the statute of limitations in the Illinois Parentage Act where his delay in filing the petition was not reasonable; regardless of mother's earlier representations that he was child's father, he "was free to initiate an action whereby he could obtain legal recognition of his rights as [a] father"). Nicholas knew at all times that he would have to formally adopt William in order to be his legal parent. Yet, during the entirety of the parties' marriage, from May 2009 to September 2010, Nicholas did not file a petition to adopt William. "[E]quity aids the vigilant and not those who sleep on their rights." *Bell v. Louisville & Nashville R.R. Co.*, 106 Ill. 2d 135, 146 (1985) (citing *Flannery v. Flannery*, 320 Ill. App. 421, 432 (1943)). We find that, under the facts of this case, equitable estoppel is not available and not appropriate. The circuit court's refusal to apply equitable estoppel in this case was not against the manifest weight of the evidence.

¶ 30                                    III. Equitable Adoption

¶ 31 Nicholas argues strenuously that he should not be penalized for his failure to merely complete the "ministerial act" of filing a petition for adoption, as Nicholas fully intended to

adopt William. However, the filing of a petition for adoption is not merely a "ministerial act." " 'Adoption is the legal and social process by which a nonbiological parent-child relationship is created.' " *In re Joseph B.*, 258 Ill. App. 3d at 963 (quoting *In re M.M.*, 156 Ill. 2d 53, 62 (1993)).

¶ 32    Nicholas cites to *Monahan v. Monahan*, 14 Ill. 2d 449 (1958), which developed the "contract to adopt" theory. In *Monahan*, there was an oral contract by the decedent to adopt the plaintiff, but the circuit court held that the plaintiff was not a legally adopted son of the intestate and therefore was not entitled to inherit his share of the intestate's property. The Illinois Supreme Court reversed and remanded the case to the circuit court to allow proof of an oral contract to adopt. *Monahan*, 14 Ill. 2d at 454. Nicholas also cites to *Dixon National Bank v. Neal*, 5 Ill. 2d 328 (1955), where our supreme court affirmed the circuit court's decree awarding an adopted child a partition of his deceased parents' land because there was a valid contract to adopt. Both *Monahan* and *Neal* relied on proof of a contract to adopt. The supreme court in *Neal* held that "it has become the settled rule of law that to be entitled to a decree for specific performance of a contract for adoption it is necessary that the contract be proved as alleged by evidence that is clear and convincing." *Neal*, 5 Ill. 2d at 331. However, Nicholas' reliance on *Monahan* and *Dixon* fails because here there was no contract to adopt.

¶ 33    Illinois has not expressly recognized the theory of "equitable adoption." See *In re Estate of Edwards*, 106 Ill. App. 3d 635 (1982). The court in *Edwards* held that proof that the foster parents had an oral contract to adopt the child, which became impossible upon the child's death, did not allow the parents to maintain a wrongful death action for the child's death as the child's next of kin under the wrongful death statute and thus affirmed the dismissal of the action. *In re Estate of Edwards*, 106 Ill. App. 3d at 638-39. The appellate court held that "[p]roof of the elements of an oral contract to adopt merely permits the enforcement of contract rights; it does not create a parent-child relationship or afford all of the legal consequences of a statutory adoption." *In re Estate of Edwards*, 106 Ill. App. 3d at 638.

¶ 34    Although equitable adoption has been applied in other contexts in other jurisdictions, most notably in intestate succession cases where an adoption was initiated but never completed and in wrongful death cases, it is not recognized in the context of custody proceedings in Illinois. The facts in this case are not similar to the circumstances in intestate cases, as here there was no contract to adopt and Nicholas never even filed the adoption petition. Instead, Nicholas relies merely upon his intent to adopt. Intent to adopt and behaving as a parent do not give rise to the legal status of a statutory adoption under Illinois law. The circuit court did not err in refusing to recognize an "equitable adoption" in this case.

¶ 35                                    IV. *Parens Patriae*

¶ 36    Nicholas further argues that the circuit court erred by not exercising a plenary *parens patriae* power to afford respondent standing regardless of the statutory scheme in order to protect William's best interest. " '[E]ach branch of government has concurrent powers and responsibilities that are in the nature of *parens patriae*.' " *In re D.S.*, 198 Ill. 2d 309, 328 (2001) (quoting *In re S.G.*, 175 Ill. 2d 471, 488 (1997)). The doctrine of *parens patriae*

-9-

" 'represents an expression of the general power and obligation of the government as a whole to protect minors and the infirm.' " *In re D.S.*, 198 Ill. 2d at 328 (quoting *In re S.G.*, 175 Ill. 2d at 488). "[T]he *parens patriae* power, which gives the court authority to care for infants and to protect them from neglect, abuse and fraud, is codified in the Juvenile Court Act [of 1987 (now 705 ILCS 405/1-1 *et seq.* (West 2010))]." *In re K.S.*, 264 Ill. App. 3d 963, 967 (1994) (citing *People ex rel. Wallace v. Labrenz*, 411 Ill. 618 (1952)). However, "[t]he *parens patriae* power cannot extend the court's jurisdiction beyond that granted by the Juvenile Court Act." *In re K.S.*, 264 Ill. App. 3d at 967. Nicholas cites to no provision within the Juvenile Court Act to support his invocation of the *parens patriae* doctrine to recognize Nicholas as William's legal father.

¶ 37    The *parens patriae* doctrine is also expressly incorporated into the jurisdictional section, section 601(a), of the Illinois Marriage and Dissolution of Marriage Act. *Milenkovic v. Milenkovic*, 93 Ill. App. 3d 204, 213 (1981). However, the court's emergency *parens patriae* power under section 601(a) of the Illinois Marriage and Dissolution of Marriage Act "is considered extraordinary and is not intended as the basis of jurisdiction for general custody disputes between parents and others." *Milenkovic*, 93 Ill. App. 3d at 213 n.8 (citing Ill. Ann. Stat., ch. 40, ¶ 601, Historical & Practice Notes, at 7 (Smith-Hurd 1980)). Nicholas has not cited any support for his request to invoke this extraordinary power of the court to confer standing on him to seek custody of a child who is legally not his child. There is no authority to confer standing on Nicholas as William's father.

¶ 38                          V. Adjudication That William Was Fatherless

¶ 39    According to Nicholas, the trial court erred in adjudicating William fatherless, and no public policy is served by such a result. However, we note that the Illinois Supreme Court has specifically held that no liberty interest exists with respect to a child's psychological attachment to a nonbiological parent. See *In re Marriage of Simmons*, 355 Ill. App. 3d 942, 956 (2005) (citing *In re Petition of Kirchner*, 164 Ill. 2d 468 (1995)). Miki completed her legal adoption of William as a single parent in Wisconsin. See Wis. Stat. Ann. § 48.82(1)(b) (West 2008) (providing for adoption by a single unmarried adult). Nicholas cites to no authority that supports his argument that a child is required to have an adjudicated father. As such, we affirm the circuit court's dismissal.

¶ 40                                         CONCLUSION

¶ 41    We affirm the circuit court's dismissal due to Nicholas' lack of standing because: (1) Illinois has not adopted the "equitable parent" doctrine and Nicholas has no standing as a parent to seek custody under the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/101 *et seq.* (West 2010)), the Illinois Parentage Act (750 ILCS 40/1 *et seq.* (West 2010)), or the Illinois Parentage Act of 1984 (750 ILCS 45/1 *et seq.* (West 2010)); (2) equitable estoppel does not apply here due to Miki's holding out of Nicholas as a parent, where Nicholas was aware at all times that William was not his biological child and that formal adoption was necessary; (3) Illinois does not recognize "equitable adoption" in child custody proceedings and a "contract to adopt" theory does not apply because here there was

no contract; (4) there is no basis to invoke the *parens patriae* power under the Juvenile Court Act of 1987 (705 ILCS 405/1-1 *et seq*. (West 2010)); and (5) there is no requirement that William must be adjudicated to have a father and Miki legally adopted William as a single person.

¶ 42    Affirmed.